5725. HALL *v.* GENERAL ACCIDENT ASSURANCE CORPORATION LIMITED, OF PERTH, SCOTLAND.

1. The court erred in awarding a nonsuit.
(a) A clause in a policy of accident insurance, in which payment in the event of death is conditioned upon the requirement that the death shall result solely from an accidental cause, must be reasonably construed,

· most favorably to the insured, and must be so construed as to give effect to the manifest intention of the parties in entering into the contract.

(b) Where an old man, large and heavy, and suffering from an incurable chronic affection of the kidneys, slipped and fell in a heap while endeavoring to step down from a sidewalk into the street, with the apparent intention of crossing the street diagonally, and death resulted in a few days thereafter, and there is no evidence that the insurer was not fully aware of the physical condition of the assured, the insurer is not necessarily relieved from liability upon its contract because the death may only have been accelerated by the fall; nor is the insurer relieved even if the chronic malady from which the insured suffered may have contributed to cause his death; for if the fall was the sole proximate cause of the death, it would be immaterial that the physical condition of the insured aggravated his injury or hastened his death.

(c) The question of proximate cause is one of fact, for determination by a jury; and in the present case the evidence in behalf of the plaintiff authorized the conclusion that, though the insured might have died within a short time even if he had not received the injury in question, he would probably have lived for a considerable period of time, and would not have died at the time he did if he had not received the injury.

2. The opinion evidence of an expert witness is not conclusive, and is not entitled to more probative value than the jury may think it has; and especially is this true when the opinion announced by the witness is coextensive with the entire scope of the jury's investigation, and is absolutely decisive of the only issue to be determined by the jury.

3. Upon the evidence adduced, the plaintiff was entitled to have the court submit to the jury the issue of fact as to whether the accidental injury or a pre-existing ailment was the proximate cause of the death of the insured, with an instruction that to entitle the plaintiff to recover, the jury must be satisfied that the alleged injury was the proximate cause of the death. Whether the injury was the proximate cause was purely a question of fact, for it involved a determination, upon evidence, of the relations between the alleged causes and effects, and nothing more; and not only might the jury have found that one of the causes was a mere condition, but when two or more causes may have contributed to an injury, and there is doubt, or the facts are of such a character that equally prudent persons would draw different conclusions, as to which of the contributing causes was the efficient, dominant, and proximate cause, the question should be submitted to the jury.

DECIDED FEBRUARY 18, 1915.

Action on insurance policy; from city court of Macon—Judge Hodges. April 3, 1914.

The second clause of the policy insures against loss of life "which shall result solely and exclusively from injuries described" in the first clause. The injuries described in the first clause are "bodily injuries effected through external, violent, and accidental means."

*John R. L. Smith,* for plaintiff. *Payne & Jones, Hardeman, Jones, Park & Johnston,* for defendant.

RUSSELL, C. J. On June 26, 1913, suit was brought in the city court of Macon upon a policy of accident insurance, issued in favor of the plaintiff upon the life of Judge John I. Hall. On September 12, 1913, the defendant company filed a petition and a bond in the city court for the purpose of having the cause removed to the district court of the United States for the southern district of Georgia, and an order was entered approving the bond and granting the petition for removal. Thereafter, on December 12, 1913, the defendant company filed an answer to the suit in the city court of Macon. Prior to this date no pleading of any kind had been filed by the defendant in the city court. On December 19, 1913, the defendant filed in the city court a petition that the case be again placed upon the docket of that court, subject to be called up and tried. With this petition, and as a part thereof, the defendant filed an order from the district court of the United States, dated December 11, 1913, directing that the case be remanded to the city court. On December 22, 1913, an order that the case be re-docketed in the city court was entered, and on December 27, 1913, the defendant filed in that court another answer to the suit. On January 17, 1914, the plaintiff filed a motion to strike the defendant's answers, upon the ground that they were not filed within the time allowed by law, and insisted that the case was legally in default in both the United States court and the city court, no defense having been filed in the United States court while the case was there pending, and none in the city court in due time. The court overruled the motion to strike the answers, and to this ruling exception is taken.

The evidence adduced tended to show that at the time of the injury Judge Hall was seventy-two or seventy-three years of age; a large, tall, heavy, fleshy man. He had an incurable chronic case of interstitial Bright's disease for about two years prior to his injury. The contract of insurance was made twenty-six days prior to the injury. It was made upon statements made by him and warranted to be true. So far as the record shows, the company knew of his age, his physical condition, and the state of his health at the time of the issuance of the policy. At the time of his injury he was regularly engaged in the practice of law, daily pursuing the duties of that profession. His office was on the second floor of a building in which there was no elevator, and had to be reached by a flight

of marble steps without any banister. or railing—a treacherous place. He constantly ascended and descended these steps without assistance, and walked from his home to his office twice each day. On Saturday before the injury on Monday he left his home in Macon and went to Griffin alone, to spend the week end, returning home alone on Sunday afternoon. Monday morning he was at his office, although it was a raw, cold, drizzly, rainy day (the 23d day of December). He went home to his dinner as usual. After dinner, although it was raining quite hard, he started back to his office. While going down hill in the rain with his umbrella over him, he started to leave the sidewalk and cut across the street, "he stepped off the curbing and slipped," his foot "went from under him," and "he went down in a heap." He was picked up out of the gutter and carried into a near-by church out of the rain. He was then carried in a hack to his home. He was suffering pain and was unable to walk. He could not bear his weight on his injured leg. He was badly bruised about the buttock and on the knee, and abrased about the scalp. The symptoms were such that the attending physician thought his hip was fractured. It was only by waiting until the next day and resorting to measurements that it was determined that his leg was not broken. However, when first injured, he was perfectly conscious and rational, and he continued so during the day and the following night. The next morning there was a slight increase of temperature, "and that condition gradually progressed until his death," a week later. A physician testified that if a man of his size, weight and general physical condition, in consequence of his foot slipping from under him, fell upon a sidewalk or against a curbing, "such an occurrence was one that was calculated to cause the death of such a man." He testified also that in his opinion the fall precipitated uremic poison, which is the terminal state of chronic Bright's disease, and caused the death; that in his opinion the fall "precipitated the uremia which caused his death;" also that he had been afflicted with chronic Bright's disease for at least two years, perhaps longer; and "if there had been no interference, that condition of the kidneys would have killed him." However, he could not say that it would have caused his death at that time. How long it would have been reasonably possible for a man in his condition to live if nothing extraordinary had happened to him, the

witness "could not say, for the simple reason that he might have lived a year, he might have lived two years, and he might have lived a week, and he might not have lived more than one day. You can not prognose conditions of that kind at all with any degree of extent [certainty?]. I can say he might have lived two years." He testified also that he regarded Judge Hall, considering his age, etc., as a man of unusual constitution, with very good recuperative powers. The plaintiff (a son of the deceased) testified that he had been closely associated with his father for many years, and that a very slight illness would make him more or less delirious, and he would very quickly recuperate; but that the progress of his condition from the time of his fall was steadily worse. At the conclusion of this evidence the court, on motion of the defendant's counsel, granted a nonsuit; and to this judgment exception is taken.

The assignment of error in which complaint is made that the court erred in refusing to strike all of the defendant's pleas, because they were filed too late, raises an important question of practice, which is further complicated by the fact that at the time the United States district court remanded the cause to the city court of Macon no answer had been filed in the United States court, although the case had been pending therein for a period longer than that allowed for the filing of a plea; and since we are of the opinion that the judgment should be reversed upon the award of a nonsuit, we do not deem it best to undertake at the present time to adjudicate the merits of the assignment of error in regard to the court's refusal to strike the plea of the defendant, when the decision must be rendered by only two judges of this court and therefore would not have the same finality as a conclusion reached by a full bench. The omission to decide this point at this time will not prejudice the rights of the parties, since the exceptions to the ruling of the trial judge have been preserved by timely exceptions pendente lite.

1. In our opinion the learned trial judge erred in awarding a nonsuit, the judgment being based, in our opinion, upon a construction of the language of the policy of accident insurance so strictly literal as to defeat the intention of the parties, and, as we think, losing sight of the fact that the stipulations relied on for defense necessarily referred to the prime controlling proximate cause of the injury,—the causa causans, without which death would not have resulted at the time that it did. To our minds, the fact

that Judge Hall may have had an incurable disease, which by the acceleration of its influence and effect may have caused the death, would not necessarily preclude a right of recovery, although it was stipulated in the contract of insurance that the amount stipulated should be paid only when death resulted *solely and exclusively* from the injury. Presumably the company knew from the application of Judge Hall, which was made twenty-six days before the accident, that he was suffering from an incurable affection of the kidneys. If they did not know it, they could have known it, for there is no charge in the answer that there was any concealment on the part of Judge Hall of his true condition at the time the application was made. To hold in any case that a contract which stipulates that the loss for death should be payable only when the loss results solely and exclusively from an injury, would be to hold that death must, in every case, be instantaneous and the immediate effect of the injury in question, for it is a matter of common knowledge that almost every human being has some weak spot in his organisms which might to a larger or smaller degree contribute to bring about death in a particular way in that particular case, although another person under the same circumstances might not have died. Except in the case of a human being who is in perfect health, or unless the death is instantaneous, death never supervenes when it can not be said that there was perhaps more than one cause which contributed to the fatality. If a company which writes accident insurance insures one who is suffering from a number of maladies against loss of life solely and exclusively due to the accident, and an accident happens which perhaps would not have caused the death of a normally healthy person and yet which, by precipitating the baneful effects of the maladies, shortens the life of the person in question by any appreciable length of time, no matter how short, the injury, as the underlying essential proximate cause, must at last be said to have produced the result which otherwise would not have happened at the time and place at which it occurred. In the present case the insured was in many respects a vigorous man; he was afflicted with an incurable disease of the kidneys which sooner or later was certain to have terminated his life. How long he might have lived but for the injury which accelerated the effects of his disease is immaterial. The true question in the case is whether he would have died at the time that he did die if he had not re-

ceived the injury, conceding the injury to have been the result of an accident. If the jury should find that his fall was due to disease, and not an accident due to his misplacing his foot or miscalculating the distance to be descended from the edge of the sidewalk to the roadway of the street, or other accidental cause, there would be no right of recovery, because the loss, in that event, would not be due solely and exclusively to an accident as the proximate cause, but might be due to the disease. This is the first fact for a jury to determine. However, if on the other hand the assured accidentally slipped and fell upon the street, the mere fact that the fall hastened his death by aggravating the disease so that he only lived a week, when even if he had not fallen he might not have lived as much as a month, would not defeat a recovery on the policy. It may be granted that the words of the policy which restrict the indemnity for death losses to those resulting solely and exclusively from bodily injuries through external, violent, and accidental means might avoid the contract in the present case if consideration be given only to the matter of predominance of the various causes which may have contributed to Judge Hall's death, instead of focusing the investigation upon the ascertainment of the proximate and primary cause, but for which death might or might not have resulted at the time that it occurred. In the view most strongly favorable to the defendant, the testimony showed that Judge Hall's tenure of life was more than ordinarily uncertain, but it did not show that he would have died when he did if he had not fallen, for, on the contrary, there was evidence that the fall, by aggravating the complaint from which he was suffering, probably hastened his death. In our view of the case, it is for a jury to declare, from all the facts in proof, what was the proximate cause of the death of the insured. If there was only one proximate cause of the bodily injury and this was brought about by "external, violent, and accidental means," such as an accidental slipping and falling, the insurance company would be liable upon its contract without regard to the fact that the assured was badly diseased and that the results of the fall in his case would naturally be more serious than if he had been in perfectly good health and a young man. Cases can be imagined where one of two young men (both supposed to be in excellent health) might survive without shock an injury effected through external, violent, and accidental means, while the

other, having a weak heart, might collapse and die from fright in the presence of imminent and appalling danger. We think the circumstances in proof were sufficient to have required the case to be submitted to the jury, since the question of proximate cause is peculiarly a jury question; and that the learned trial judge erred when he "chopped off" the case by the "mechanical process of nonsuit."

For the purposes of this case the two clauses of the policy are to be read together as insuring against loss of life "which shall result solely and exclusively" from "bodily injuries effected through external, violent, and accidental means." If the contention of the defendant in error is correct, or if the contract is given an absolutely literal meaning, these clauses of the policy mean nothing to the plaintiff; with the result that the writing was no contract at all. It certainly can not be presumed that an intelligent man would take such a policy if he had supposed it to be an absolute nullity. When policies of this kind are made and circulated and the money of those who are insured is taken, the law will impute to the company an intention that the policy shall mean something beneficial to the insured. This court will not presume that the parties intended to make a contract which was not in fact a contract, but will give the language a reasonable interpretation in furtherance of the purposes which the whole body of the writing imports. As was said by the Supreme Court of Arkansas, in a similar case, "It is the duty of courts to give such construction to a policy, if the language used fairly admits, as will make it of some substantial value and carry out the intention expressed therein that liability is incurred where death occurs from accidental injury." Fidelity & Casualty Co. *v.* Meyer, 106 Ark. 91, 99 (152 S. W. 995, 44 L. R. A. (N. S.) 493). It is a settled rule that policies of insurance are construed liberally in furtherance of a general scheme proposed. Such policies are construed most liberally in favor of the assured and most strongly against the insured. *Massachusetts Benefit Life Asso. v. Robinson*, 104 *Ga.* 256 (2), 277 (30 S. E. 918, 42 L. R. A. 261). The courts, of course, have no power to make contracts for parties, nor even to vitalize a void contract; it is their duty only to enforce such contracts as have been made, but it is plain that where strict and literal construction of a policy of insurance would defeat the whole purpose of the

contract, it is the duty of the courts to give effect to the manifest and reasonable intention of the parties. To say, in construing contracts like that now before us, that if there was any disease contributing to an injury, no matter how slightly, the benefits of the contract would be withdrawn, would be to defeat the contract as it was undoubtedly understood by the insured at the time it was proposed to him; and it is provided by the code that in case of doubt a contract should be given that construction which goes most strongly against the party executing the instrument or undertaking the obligation. Civil Code, § 4268. As was said by the Supreme Court of Missouri in Fetter *v.* Fidelity &c. Co., 174 Mo. 256 (61 L. R. A. 459, 73 S. W. 592), "If we should give to those qualifying words of the policy the meaning it is now claimed by defendant they were intended to have, there would be scarcely any limit to their nullifying influence. . . If, therefore, there could be discovered in a man's body after his death any condition, before undiscovered and unsuspected, that, under scientific tests, would render him more amenable to accidents or less capable of resisting their influence, the policy would not cover the case."

We think the Supreme Court of Georgia, in accordance with the general proposition stated above, has decided the principle controlling this case, and has announced the doctrine not only that the disease from which the insured suffered must have been a substantially contributing cause to the injury, but that liability is not defeated merely because the existing disease aggravated or rendered more serious the consequences of the accident. It is true that the policy under consideration in *Thornton* v. *Travelers Ins. Co.,* 116 *Ga.* 121 (42 S. E. 287, 94 Am. St. R. 99), and in *Travelers Ins. Co.* v. *Thornton,* 119 *Ga.* 455 (46 S. E. 678), used the words "independently of all other causes," instead of the words "solely and exclusively," used in the contract now under consideration, but there is no difference between means which "independently of all other causes" produce a result and means which "solely and exclusively" produce it. If a cause operates to produce an effect independently of all other causes, it is the sole and exclusive cause of that effect, and the result accrues solely and exclusively from that cause. Penn *v.* Standard Life Ins. Co., 158 N. C. 29 (73 S. E. 99, 42 L. R. A. (N. S.) 593); s. c. 160 N. C. 399 (76 S. E. 262, 42 L. R. A. (N. S.) 597). In the *Thornton* case, 116 *Ga.*

124, the contract contained an additional clause which exempted the insurer from liability if an injury or death resulted wholly or partially, directly or indirectly, from hernia, which naturally made the policy more favorable to the insurer than is the contract involved in the present case. Illinois &c. Co. v. Parks, 179 Fed. 794 (103 C. C. A. 286) ; Fidelity Ins. Co. v. Meyer, supra. Yet, with these clauses added to one having the same force and effect as the clause involved in this case, the Supreme Court held that the plaintiff was entitled to recover unless the "existence of the hernia at that time was a substantial contributing cause which wholly or partly, directly or indirectly, brought about the injury resulting from the accident," and that "liability under the policy is not defeated by showing simply that the existence of the hernia rendered more serious the consequences resulting from the accident." In the opinion (116 Ga. 129) Mr. Justice Cobb says, "To illustrate: If a policyholder should have a serious and long continued illness, such as a fever of some nature, and while recovering therefrom, and in a condition unable to resist successfully any serious shock, should receive a blow upon the head from falling plastering, from which death ultimately, though not immediately, resulted, the proximate cause of the death would be, not the fever, but the blow from the plastering, although death may not have resulted but for the debilitated condition of the injured person resulting from the fever. In such a case the immediate cause of the death was the blow on the head, though the consequences might be the result of the disease from which he suffered. In order to defeat a recovery under such a clause it must be shown that the disease was the substantial cause of the injury, and the mere fact that the disease may aggravate the consequences of the injury and make them more serious than they would have been otherwise does not bring the case within the exception stated in the policy." The Supreme Court could not give the terms of the contract in the Thornton case their absolutely literal meaning without holding that the contract amounted to nothing and was intended to mean nothing; and since there is no man who is physically perfect (and only of such can an accidental injury to which no other cause contributes be predicated), so in the contract now before us, the agreement to pay in the event of disability or death would be valueless if any one of a thousand conditions which might as variously differ in as

many different individuals should aggravate the results of an injury of which the real prime efficient, underlying cause was an accident. While the precise point was not then before the court, and the dictum quoted is for that reason obiter and mere persuasive authority, we are satisfied that the correct principle controlling the case at bar is stated in the opinion of Mr. Justice Cobb in the *Thornton* case. The kind of clause which the excerpt quoted refers to as "such a clause" is one insuring only against loss resulting from bodily injuries effected through external means which shall independently of all other causes immediately and wholly disable, and which, in addition, expressly stipulates that the insurance shall not cover death resulting wholly or partially, directly or indirectly, from disease,—a contract which would seem to be stronger in favor of the company than the one involved in the present case. In that case it was left with the jury to say whether the injury was caused by the fall and the result merely aggravated by the hernia, or whether the hernia was a contributing cause of the injury. And so in the present case we think that it should have been left to the jury to determine whether the death of Judge Hall was caused by the fall, although accelerated by the incurable disease from which he suffered, or whether the disease was a contributing cause of the injury from which his death resulted.

We think that when the plaintiff shows a bodily injury which, prima facie, was inflicted through external, violent, and accidental means, the insurer, in order to rebut a prima facie right of recovery and to defeat liability, must show (and of course he may do this by testimony which comes from the plaintiff's witnesses) that the injury in question was due in the first instance, either wholly or in part, to the disease from which the insured appears to have suffered. In other words, where, as in the present case, it appears that the assured was bruised and wounded by a fall which was apparently accidental, it is to be presumed, until the contrary appears from the testimony (whether for the plaintiff or the defendant of course being immaterial), that the fall was the prime cause of the final result. If there is evidence that the result was caused by an intervening cause, or that such a cause contributed to the result, it is then for a jury to say whether or not the presumption raised by proof of an injury due to a cause prima facie accidental has been rebutted. *Citizens Bank of Tifton* v. *Timmons,* 15 *Ga. App.* 815

(84 S. E. 232). The ascertainment of the proximate cause of death is the real object to be attained in every such case as that now before us. Lawyers, judges, and psychologists have groped for centuries and settled on nothing more definite than proximate cause. To say absolutely that a death resulted solely and exclusively from an injury is to say that it would not have resulted without the injury, and this can never be said except as a matter of mere probability. "The days of our years" are numbered, but it is reserved to the Infinite Great Cause alone to know the number. Policies of life and accident insurance are not contracts of indemnity; they are anomalies in the law. The nearest approach to reconciling them with legal principles is to classify them as sales of annuities by the insured,—as contracts whereby, in consideration of the insurer agreeing to pay a certain larger sum to the assured, the latter pays the insurer an annuity. Vance on Insurance, 56, § 564. Nevertheless, life insurance and accident insurance are well-settled businesses, and such contracts are well recognized. A contract of insurance is a serious matter, and not a mere contest of skill in using words. "Insurance is *business* and not elaborate and expensive trifling." (Bleckley, J., in *Mobile Fire Department Ins. Co.* v. *Coleman,* 58 *Ga.* 257). The law presumes that the insurer really intends to pay for the annuity which the insured pays. In contracts of life and accident insurance the amount to be paid is arbitrary and need not bear any relation whatever to the amount of pecuniary loss actually sustained. A man whose life is worth nothing may insure it for a million dollars and the insurance may be collected regardless of the amount of pecuniary loss resulting from the accident insured against. These considerations, we think, dispose of the idea that the holder of a contract of accident insurance would be entitled to nothing because perhaps the assured was about to die anyway, and places the case where not only the presumable intention of the parties to the contract, but the law itself, in giving effect to such an intention, would place it.

In the opinion in the *Thornton* case (116 *Ga.,* supra), Justice Cobb cites a number of authorities sustaining the proposition that in giving effect to contracts such as the one now before us (in which liability is assumed only in those cases in which loss results solely and exclusively from external, violent, and accidental means), the prime proximate cause of the injury must be sought. A num-

ber of additional authorities which have been brought to our attention by the industry of the learned counsel for the plaintiff in error may also be cited. In Fidelity Insurance Co. v. Meyer, supra, the policy insured against injuries sustained through "accidental means resulting directly, independently, and exclusively of all other causes, in death," and this language must be said at least to be as strong as the words "solely and exclusively," used in the policy before us. It appeared that Meyer received a bruise as the result of a jolt, while riding in a wagon, and that after some time he died. After his death it was discovered that he was affected with a dormant cancerous growth or formation within his body, which was affected by the bruise and excited it to rapid growth, causing an erosion of the blood vessels, with consequent hemorrhages, from which death resulted. The trial judge charged the jury that if they found that Meyer would not have died as and when he died if the accident had not occurred, and that, while death from the cancer might have resulted, it would have been deferred until a later period of his life, they should find for the plaintiff. As to this the Supreme Court of Arkansas said: "It is contended that that instruction is wrong, and that it involves an erroneous construction of the term of the policy, in that it permits a recovery even though the previously existing disease had co-operated in producing death. The determination of this question involves the construction of that part of the policy which limits liability to 'bodily injuries sustained through accidental means resulting directly, independently, and exclusively of all other causes, in death.' The effect of this instruction was to make the company liable, under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury. We are of the opinion that that is the correct interpretation of the contract, for if the injury, by aggravating the disease, accelerated the death of the assured, then it resulted 'directly, independently, and exclusively of all other causes.' In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition."

In Fetter v. Fidelity Ins. Co., supra, the insured was an old

man, sixty-nine years of age. In attempting to close a window with a pole, it slipped and he was thrown against the edge of a table. He immediately dropped the stick, turned pale, and groaned. In a few minutes he went home, looking tired and pale when he arrived. He ate his supper and went to bed. Next morning he went to see his physician and returned home. He suffered pain in his kidney and passed blood in his urine. He grew gradually worse and died twenty-six days after the injury. The autopsy revealed that a kidney was cancerous and ruptured between the cancerous and normal part. The court charged the jury that if death "was directly caused by the accidental rupture of his right kidney, then their verdict should be for the plaintiff on both counts of the petition [in amounts stated]; notwithstanding that the jury further believes from the evidence that said kidney was at the time of the rupture diseased; provided that the jury further finds that said Fetter would not have died at the time and under the circumstances and in the manner he did die, if it had not been for the accidental rupture of his kidney." The Supreme Court sustained the judgment as against an exception to this charge, saying: "But the contention of the defendant is that the accident would not have resulted in the rupture if the cancer had not been there. . . If we should give to those qualifying words of the policy the meaning it is now claimed by defendant they were intended to have, there would be scarcely any limit to their nullifying influence. . . If, therefore, there could be discovered in a man's body after his death any condition, before undiscovered and unsuspected, that, under any scientific tests, would render him more amenable to accidents or less capable of resisting their influence, the policy would not cover the case. . . . The causes referred to in the policy are the proximate or direct, not the remote, causes." .

In Driskell v. U. S. Health & Accident Ins. Co., 117 Mo. App. 362 (93 S. W. 880), where the company agreed to pay only if death should result "solely from such injury," the court said: "We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result, and not that it must have been so virulent in character as necessarily and inevitably to have produced that result regardless of all other conditions and circumstances. People differ so widely in health, vitality, and ability to

resist disease and injury, that what may mean death to one man would be comparatively harmless to another; and, therefore, the fact that a given injury may not generally be lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease and low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury." See also Beile *v.* Travelers Protective Asso., 155 Mo. App. 629 (135 S. W. 497); Modern Woodman Accident Asso. *v.* Shryock, 54 Neb. 250 (74 N. W. 607, 39 L. R. A. 826); Continental Ins. Co. *v.* Loyd, 165 Ind. 52 (73 N. E. 824); Bohaker *v.* Travelers Ins. Co., 215 Mass. 32 (102 N. E. 342, 46 L. R. A. (N. S.) 543).

2. The opinion evidence introduced in this case was not conclusive or controlling. As has several times been held by this court, the opinion of witnesses, expert and non-expert, is submitted to juries under a different rule from that concerning testimony of witnesses who purport to swear to actual facts. It is the duty of the jury to accept as true testimony of the latter kind, unless the witness is impeached or otherwise discredited, but the opinions of witnesses, expert or non-expert, are submitted to the jury for merely whatever the jury may think they are worth. The jury, upon review of the facts in the case, or even by reference to their own experience, may discard entirely the opinion of the most learned expert; and certainly an expert witness can not by categorical testimony decide the entire issue in a cause, unless the jury approves his statement. "An expert may aid the jury, but he can not perform the functions of a juror and, under the guise of giving testimony, state a legal conclusion. An expert may give his opinion as to medical facts, but he can not determine the legal classification of such facts and testify as to what was or was not 'a con-

tributing cause' of an injury." *Travelers &c. Co.* v. *Thornton,* 119 *Ga.* 455. Even if the physician could testify categorically in the present case that the fall was not the sole and exclusive cause of the death of the deceased, that evidence, under the rule as to the probative value of opinion evidence, would not have demanded a verdict in favor of the defendant or authorized the award of a nonsuit.

3. Upon the testimony in the present record a jury must decide what was the real efficient, proximate cause of Judge Hall's death. "When two or more causes contribute to an injury, where there is doubt, or the facts are of a character that equally prudent persons would draw different conclusions therefrom, in such cases, which of the contributing causes is the efficient, dominant, proximate cause is a question to be submitted to the jury." *Continental &c. Co.* v. Loyd, supra. "The genius of our law does not claim for it infallibility. It recognizes that there is an element of uncertainty that enters into every forensic contest, which human wisdom can not always make certain, and its aim is to come as close to the right as the means at hand will permit. Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination, and with all their human liability to err we have never yet discovered any better tribunal for the trial of questions of fact, even where highly scientific propositions are involved. Science itself appeals to common sense for its recognition." *Fetter* v. Fidelity etc. Co., supra. And so while we hesitate to differ with our very able brother of the trial bench who presided in the present case, we are clearly of the opinion that the evidence in this record should have been submitted to a jury.

*Judgment reversed. Broyles, J., not presiding.*