31944. METROPOLITAN LIFE INSURANCE COMPANY *v.* LATHAN.

Decided April 10, 1948. Rehearing denied April 29, 1948.

*O. E. Scott, J. W. Dennard, Jones, Jones & Sparks*, for plaintiff in error.

*George M. Mixon, Graydon D. Reddick*, contra.

Sutton, C. J. Thomas Lathan, as beneficiary, sued Metropolitan Life Insurance Company in the Superior Court of Crisp County, to recover a double indemnity payable under the accidental-death-benefit features of three life-insurance policies issued on the life of Nannie E. Lathan, the plaintiff's wife, who died on December 4, 1943, as a result of injuries sustained in an automobile accident on September 12, 1943. Recovery was sought for accidental-death benefits of $506, as a penalty provided by law of 25% of the amount, $126.50, and attorney's fees of $250. The jury found for the plaintiff in the amount of $506 as double indemnity, with interest at 7% from date of death, $138.24, and $126.50 penalty for bad faith, plus $250 attorney's fees with costs of court, and judgment was entered accordingly. The defendant

filed a motion for new trial on the general grounds, which was later amended by alleging that so much of the verdict and judgment thereon as related to damages and attorney's fees was contrary to law and without evidence to support it (a) because the evidence failed to show that the refusal of the defendant to pay was in bad faith; and (b) because the defense of the defendant was not frivolous and was meritorious. The amended motion for a new trial was overruled, and the defendant excepted.

On the trial, it was admitted: that on September 14, 1943, the insured was injured in an automobile accident, which, independently of other causes, resulted in her death on December 4, 1943, at which time the three life-insurance policies on which this action is based were in full force and effect, with premiums fully paid; that the face value of the policies had been fully paid; and that the only issue involved was whether or not the deceased had, at the time of the accident causing her death, attained the age of 70 years, and if so, the defendant, under the provisions of the policy, was not liable for double indemnity.

Obie Lathan Brown, a daughter of the insured, testified: that her mother was 68 years of age at the time of her death; that the mother's birth year was 1875; that she knew her mother's age because her mother had always told her this was her age; that their family Bible had been destroyed in a fire; but that Eva Bryant, an older sister of the insured, had a family Bible showing her (Eva's) birth date; and that the witness had this Bible. She also testified that the agent of the insurance company told her that the company would pay the double indemnity in these policies if she would furnish a birth certificate showing her mother's age to be less than 70 years; and that she obtained and furnished the defendant with a birth certificate showing that the age of the insured at the time of her death was 68 years, but it was returned by the defendant with the notation that the proofs were considered insufficient. This witness further testified that she made application for WPA work in 1940, and at the welfare office they asked her if her mother's age was not about such and such, and that she answered on the same basis. She testified that she furnished the insurance company with all the proofs they asked for, so far as in her power to obtain; and that the local

agent of the company stated that they were entitled to double indemnity and should get it.

Tom Lathan, the plaintiff, testified: that he was the husband of Nannie E. Lathan, who died from accidental injuries on December 4, 1943; that he did not know how old he was or when he was married; that he did not know his wife's age, but that her mother always told him she was born in 1875; that the insurance agent came to his house and told him, if he would sign a paper, the insurance company would pay him; that he signed the paper, but the insurance agent held another paper on top of it; and that all he could see was the place where he signed, and he did not know what was in the paper he signed. He testified that the insurance agent tried to get him to say that his wife had heart trouble, but that she never had it and had never taken any store-bought medicine in her life, and that the insurance agent "made like we had never been married."

The plaintiff introduced in evidence the family Bible of Eva Bryant, showing the birth date of Eva, sister of the insured, as May 22, 1873; two insurance policies issued by companies other than the defendant to the insured, one issued October 7, 1911, to Nannie Lathan, age 36, the other issued September 16, 1918, to Nannie Lathan, age 43; a certificate from the U. S. Bureau of Census, taken from Census of 1940, as of April 1, 1940, showing age of Nannie Lathan as 65 years; and a delayed birth certificate issued by the Ordinary of Crisp County, Georgia, showing date of birth of the insured as January 23, 1875.

The three policies sued on were introduced in evidence as follows: One for $266, dated September 10, 1923, showing age of the insured at that date to be 48 years; another for $90, dated March 25, 1929, showing age of the insured at that date to be 54 years; another for $150, dated July 8, 1929, showing age of the insured at that date to be 54 years.

The testimony of Virginia Tyler, who was in charge of the County Welfare Board and custodian of its records, and who testified for the defendant, indicated that in the application of Obie Hyacinthus Lathan for work on November 26, 1940, she had given the date of birth of her mother, Nannie E. Lathan, as January 21, 1873, and that in an application for old-age assistance signed by the name of Nannie Bryant Lathan, dated Novem-

ber 9, 1942, the date of birth of the applicant was shown as January 23, 1873; and the two documents were introduced in evidence by the defendant.

The defendant also introduced in evidence a certificate from the Census Bureau, dated February 8, 1942, taken from the census of 1900 as of June 1, re Nannie E. Lathan, deceased, nee Bryant, showing her birth as May, 1873.

The defendant admitted in its answer to the petition that the three policies sued on (copies of which were attached to the petition) would show that the insured had not reached the age of 70 at the time of her death.

■ The verdict in favor of the plaintiff was amply authorized by the evidence, and the trial judge did not err in overruling the motion for a new trial on the general grounds.

■ The plaintiff in error contends in the special ground of the motion that so much of the verdict as found for damages and attorney's fees is contrary to law and without evidence to support it (a) because the evidence failed to show that the refusal of the defendant to pay the loss claimed under the policy was in bad faith; and (b) because the defense of the defendant was not frivolous and was meritorious.

The Code, § 56-706, provides that insurance companies, refusing to pay a loss within 60 days after a demand shall have been made by the policyholder, shall be liable on the policy, in addition to the loss, for not more than 25% on the liability for said loss, and also for all reasonable attorney's fees for the prosecution of the case, "Provided, it shall be made to appear to the jury trying the case that the refusal of the company to pay said loss was in bad faith." Bad faith, within the meaning of the statute, is any frivolous or unfounded refusal in law or in fact to pay a loss according to the insurance contract after legal demand. *Metropolitan Life Ins. Co.* v. *Lovett*, 50 *Ga. App.* 763 (4) (179 S. E. 253). Bad faith in this respect is a question for the jury to pass on, and it may arise from the facts and circumstances of the case, that is, from the whole complexion of the case as presented to the jury. See *Ætna Life Ins. Co.* v. *Stewart*, 49 *Ga. App.* 786 (5) (176 S. E. 777).

The age of the insured at the time of the issuance of each of the policies sued on was written therein; and although these poli-

cies were issued by the defendant company to the insured on separate dates, the age appearing in each corresponds with the contention of the plaintiff in this case and serves to show that the insured was 68 years of age at the time of her death in 1943. The first of these policies is dated September 10, 1923, and, according to the record, the insurance company had collected the weekly premiums thereon from the insured for a period of 20 years, up to the time of her death, and had collected the weekly premiums from the insured on the other two policies for more than 14 years. It is a well-settled principle of law that contracts of insurance are to be construed most strongly against the insurer and in favor of the insured. The defendant was necessarily familiar with all the terms and provisions of these policies; and the only question raised by the insurance company, after the accidental death of the insured, was as to her age at that time. According to the testimony of the daughter of the insured, the insurance company had been furnished with all the proofs it asked for in connection with the policies, so far as it was in her power to obtain and furnish them. The plaintiff and the insured, at the time of the death of the insured, were an elderly negro couple, without education. They were husband and wife and had lived together as such for many years and had raised a family of grown children. On the trial of the case, specific evidence was given to the effect that, under a promise of payment of the loss covered by these policies, the beneficiary was induced to sign a paper the contents of which were unknown to him. The beneficiary further testified that an agent of the insurer "tried to make me say my wife had the heart trouble," when in fact she was healthy and had never taken any medicine, and "made like we had never married." (The suit was for accidental death benefits under the policies by the beneficiary who was the husband of the insured.) The daughter of the insured testified that an agent of the company told her they would pay the double indemnity under the policies if she would furnish a birth certificate showing her mother's age to be less than 70. She furnished such birth certificate, but it was returned by the insurance company with the notation that the proof was considered insufficient. No reason was given as to why the birth certificate was insufficient. It was a delayed birth certificate (Ga. Code Ann., § 88-1123), and was

issued by the Ordinary of Crisp County, Georgia; and the Vital Statistic Law provides that certificates filed under the provisions of the act shall be prima facie evidence of the facts stated therein. Code (Ann. Supp.), § 88-1118 (Ga. L. 1945, pp. 236, 242). Referring to the penalty for damages and attorney's fees as contained in Code § 56-706, this court ruled in *Missouri State Life Ins. Co.* v. *Lovelace,* 1 *Ga. App.* 446 (6) (58 S. E. 93), that "The penalty is one of the inherent rights attaching to a contract of insurance . . to enable the beneficiaries to obtain, free from deduction, the original benefits of the provision in their favor, according to the tenor of the policy." Under the facts and circumstances of this case, we think that it was a jury question as to whether or not the refusal of the defendant to pay the loss under the policies in question was in bad faith.

■ The verdict was authorized by the evidence and the trial judge did not err in overruling the defendant's motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232, Code, Ann. Supp., § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., Gardner, Parker, and Townsend, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. The evidence does not show that the insurance company did not have the evidence before it at the time it refused to pay the claim that it produced at the trial. In fact the petition alleges that demand was made for double indemnity on or about January 28, 1944. The date of the Census Bureau certificate for the year 1900, introduced by the defendant, was February 8, 1944, which indicates strongly if not conclusively that the company had the information on which it relied as a defense before there was a refusal to pay the double-indemnity claim. A jury could reasonably have found from the defendant's evidence that the plaintiff was not entitled to recover, and where a defense is reasonable and evidence in support thereof authorizes a verdict in favor of such defense, good faith appears as a matter of law under the facts of this case. Regardless of what the local insurance agent said or did, the company would have a right to

assert a reasonable defense and under our law cannot be penalized for not prevailing in the case. I do not think that the evidence authorized a finding that the company's refusal to pay was unfounded or frivolous. The policy was not incontestable if there was a misstatement of the age of the insured.