36560. LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE *v.* BROWN.

DECIDED FEBRUARY 26, 1957—REHEARING DENIED MARCH 20, 1957.

*Martin, Snow & Grant,* for plaintiff in error.

*Abbot & Abbot,* contra.

TOWNSEND, J. ■ According to the allegations of the petition, the insured husband of the plaintiff beneficiary while eating a noonday meal experienced severe pain in the abdominal region and upon going to the hospital it was found that he was suffering from acute appendicitis. Approximately 7 hours after he felt the pain he was prepared for an operation for appendicitis. While being administered ether he vomited and the food particles in his stomach which had not properly digested and which had not been sufficiently masticated lodged in his windpipe, causing anoxemia of the brain, thus depriving his brain of oxygen for such a length of time that it was irreparably damaged, this condition being externally manifested by cyanosis and by the presence of food in his windpipe, and resulting in his death four days later.

On consideration of the general demurrer the sole question for determination is whether or not these facts allege death by accidental means under the terms of the policy of insurance so as to result in liability against the insurance company. Policies of insurance must be construed against the insurance company. The words in the exclusion policy "taking of poison or inhaling of gas," given their usual and ordinary significance, do not exclude the insured from coverage because ether was administered to him in the course of the operation for the purpose of promoting anesthesia. The word "gas" as used in such context, ordinarily refers to that type of gas, both natural and artificial, which is used for fuel and installed in homes throughout this country, and which is considered a dangerous instrumentality when allowed to escape because it results in death by asphyxiation. However, even assuming that ether administered as an anesthetic could be classified as a "gas" under the terms of the policy, this ether did not cause the asphyxiation from which the plaintiff's death

resulted according to the allegations of the petition. The asphyxiation and consequent anoxemia of the brain were due to a foreign body, a particle of food, being embedded in the windpipe. Neither does the exclusion "death resulting directly or indirectly from bodily infirmity" bar a recovery, since the bodily infirmity of the plaintiff, appendicitis, did not cause his death, it being alleged to be "uncomplicated appendicitis of short duration."

It is contended by the defendant insurance company, citing White v. New York Life Ins. Co., 145 Fed. 2d 504 as authority, that the words "solely and independent of all other causes" and the exclusion clause "directly or indirectly from bodily or mental infirmities" preclude recovery because the insured's death resulted indirectly as a result of appendicitis, and that to construe the policy as covering this sort of situation would be a sort of "judicial larceny". Recognizing that contracts of insurance, like any other contract, must be construed in accordance with the intention of the parties, and not extended beyond the plain and unequivocal meaning therein expressed, it would nevertheless be a sort of mental sophistry to exclude coverage because of concurring factors which do not proximately result in the injury causing the death. For example, the plaintiff, suffering from an acute attack of appendicitis may be rushed to the hospital by an ambulance for emergency treatment and in the course of the journey, due to an automobile collision caused by the driver of the ambulance, may meet his death. Or, after arrival at the hospital and during the course of the operation, he might suffer a blow on the head from falling plaster from which death ultimately resulted, although, except for his debilitated condition resulting from the appendicitis, he might not otherwise have died. Under the authority of *Thornton* v. *Travelers Ins. Co.*, 116 *Ga.* 121, 122 (42 S. E. 287, 94 Am. St. R. 99) such a condition does come under the exclusion "independently of all other means . . . nor injuries, nor disability resulting wholly or partly, directly or indirectly" from the physical infirmity also suffered by the plaintiff. In *Inter-Ocean Casualty Co.* v. *Scott*, 91 *Ga. App.* 311, 317 (85 S. E. 2d 452) the *Thornton* case is held to mean "that, in order for the disease to be held a contributing cause of the insured's death within the meaning of the policy

clause, it must appear that the disease caused the injury to which the insured succumbs." In *Hulme* v. *Mutual Benefit &c. Asso.*, 60 *Ga. App.* 65, 71 (2 S. E. 2d 750) where the benefit was conditioned on accidental death "independently and exclusively of disease and all other causes" it was held that a petition, alleging that the insured following an operation for appendicitis, died as a result of the formation of an embolus which after detachment blocked a coronary artery, stated a cause of action for accidental death benefits. "While the appendicitis operation may have made possible the forming of an embolus, it is well settled that the secondary condition can not be said as a matter of law not to be the immediate cause of death. *Hall* v. *General Accident Assurance Corporation*, 16 *Ga. App.* 66, 74 (85 S. E. 600); *Pacific Mutual Life Insurance Co.* v. *Meldrim*, 24 *Ga. App.* 487 (101 S. E. 305); *Continental Casualty Co.* v. *Rucker*, 50 *Ga. App.* 694 (179 S. E. 269). A cause of action was set out in the petition as amended, and the court erred in sustaining the general demurrer." That the difference in the wording of the two policies is not material, see *Inter-Ocean Casualty Co.* v. *Scott*, supra, p. 317. In the *Hulme* and *Hall* cases the wound caused by the appendicitis operation was followed by the formation of an embolus which, upon being detached by accidental means, caused the death of the insured. Here the patient, while being operated on for appendicitis, was injured by accidental means (the lodging of food particles in his windpipe), which injury caused his death. See also Burch *v*. Prudential Ins. Co. of America, 294 N. Y. Supp. 458. The petition was not subject to general demurrer.

■ What is said above disposes of all the demurrers except ground 5 attacking the provisions of the policy which seek to recover attorney's fees on the ground of bad faith under Code § 56-706. This bad faith "must occur at the time the company fails to pay the benefit provided for in a policy of full force and effect at the expiration of the 60-day period after proof of loss and demand for payment has been made, rather than at the time of the trial." This is ordinarily a jury question. *Metropolitan Life Ins. Co.* v. *Lathan*, 77 *Ga. App.* 6 (1) (47 S. E. 2d 596). The petition alleges that in response to questions propounded by the defendant, the attendant physician certified that the insured

"strangulated on vomitus, producing marked cyanosis and asphyxiation resulting in death. The cause of death was anoxemia cerebral from accidental cause," whereupon the defendant informed the beneficiary: "This man died from the inherent dangers of an operation and certainly assumed the risk involved in submitting to surgery. We do not feel that his death resulted from 'accidental means' as this language has been interpreted by your courts." Whether or not this reason for the refusal to pay the policy constitutes bad faith is a jury question.

The trial court did not err in overruling the demurrers to the petition.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*