Eugene W. Bergin, J.
The plaintiff in this action is the widow and the beneficiary of the insured of. the defendant. At the time of the deceased’s death there was in effect a life insurance policy issued by the Colonial Life Insurance Company of America insuring the life of the deceased in the amount of $5,000.
The plaintiff commenced an action against the defendant seeking the recovery of $5,000 because of the refusal of the defendant life insurance company to pay to the plaintiff beneficiary in accordance with the double indemnity provision of the life insurance policy. The defendant has disclaimed and denied any liability for accidental death benefits.
The plaintiff moves for summary judgment pursuant to CPLR 3212 on the ground that there are no triable issues of fact and that there is no defense to the plaintiff’s cause of action.
CPLR 3212 (subd. [b]) proscribes that, “ The motion shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party.” The rule further provides: “ the motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact.”
The attorneys for the parties entered into the following stipulation of facts for the purpose of disposing of this motion:
1. That there was in full force and effect on January 7 through January 22, 1970 a contract of life insurance issued by the defendant and which contract insured the life of Peter Latragna and named plaintiff herein as beneficiary.
*716 2. That the face amount of the contract was for $5,000, which has been paid by defendant to plaintiff.
3. That the said contract also provided for an additional payment of $5,000 to plaintiff in the event that the insured, Peter Latragna, died as a result of an accidental death as defined in accordance with the life- insurance contract and in particular as defined by the supplemental agreement to said contract identified as Exhibit “B ” of plaintiff’s motion for summary judgment.
4. That on January 7, 1970 the insured, Peter Latragna, entered the G-enesee Hospital for the purpose of having performed a cholecystectomy (a surgical procedure to remove his gallbladder). That. Mr. Latragna had been, for some time previous, suffering from a chronic cholecystitis, an inflammation of the gallbladder.
5. That on January 8, 1970 the surgical procedure to remove the gallbladder was performed successfully in that Mr. Latragna’s death on January 22, 1970 was in no way caused by the manner or method employed by the operating surgeon to achieve removal of the gallbladder.
6. That prior to and during the surgical procedure, Mr. Latragna was anesthetized by the introduction of nitrous oxide and cyclopropane, both being anesthetic gases and both administered through an endotracheal tube inserted through the patient’s mouth by the anesthesiologist. That in addition to the introduction of these anesthetic gases, the anesthesiologist was also ventilating the patient by introducing through the same endotracheal tube a quantity of oxygen. That oxygen is also a gas.
7. That during the surgical procedure and while the insured was under general anesthesia he sustained cerebral anoxia resulting from an interruption in the continuous supply of oxygen to the brain that was necessary to sustain the life of1 the brain.
8. That the cerebral anoxia was caused by either of the following accidental causes of means: a) An obstruction in the airway (endotracheal tube) that was then being used to introduce, artificially, both the anesthetic gases, nitrous oxide and cyclopropane, as well as the oxygen necessary to sustain the viability of the brain at a time when the patient lacked capacity for spontaneous respiration; or b) From an overdose of cyclopropane anesthetic gas which caused the patient’s heart to stop and thereby making it impossible for the oxygen then being introduced through a clear airway (endotracheal tube) from *717 reaching the brain through the normal blood flow emanating from the patient’s heart to the brain.
9. That the insured, Peter Latragna, died on January 22, 1970 without ever regaining consciousness following the onset of cerebral anoxia occurring during the surgical procedure.
The plaintiff submitted that there are two questions presented in this motion for summary judgment:
A. Did the insured die as a direct or indirect result of or wholly or partially as a result of body or mental infirmity or illness or disease?
B. Did the deceased die as a result of1 the taking of poison or the inhaling of gas voluntarily or otherwise?
The defendant submits that the question is not what caused the death of the insured but whether or not the cause or causes of death, as stipulated, fall within any of the categories of risks not assumed or exceptions under accidental death provisions of the life insurance policy. ■
The supplemental agreement, providing for death of the insured by accidental means, reads as follows:1 ‘ bisks hot assumed.— If the death of the insured results from any of the following causes, which for the purposes of the supplementary agreement are specifically not deemed to be accidental means, the company shall not be liable for the additional accidental death benefit specified above. * * * (5) Bodily or mental infirmity or illness or disease which, directly or indirectly, or wholly or partially, caused or contributed to said death. (6) The taking of poison or the inhaling of gas, whether voluntary or otherwise.”
The court will consider first whether the deceased’s chronic cholecystitis “ directly or indirectly, or wholly or partially, caused or contributed to said death.” It should be noted that, according to stipulation of facts, the surgical procedure was successfully performed and death was in no way caused by the method or manner employed by the surgeon to achieve removal of the gallbladder.
Although it was the deceased’s cholecystitis which placed him in the circumstances of surgical procedures and it was during the surgical procedures that cerebral anoxia was sustained, the court is of1 the opinion that in no way did the existing physical infirmity, illness or disease contribute to death.
The mere fact that the events were simultaneous does not establish any causal relationship. It is clear to this court that the causal relationship between the cholecystitis and death of *718 the insured does not exist. Thus, possible causes of death do not come in within the bodily or mental infirmity exception or risks not assumed provision of the policy of insurance.
There appears no causal connection between the cholecystitis and the cerebral anoxia; further, the cholecystitis was not a competent producing cause of death. It follows, therefore, that the mere fact that the deceased was suffering from a pre-existing x condition should not preclude recovery under the double indemnity provision of the policy. (Hoyt v. John Hancock Mut. Ins. Co., 48 Misc 2d 935, affd. 26 A D 2d 907, affd. 19 N Y 2d 998.)
The pivotal issue is whether death was caused by the taking of poison or the involuntary inhaling of gas, voluntarily or otherwise. As stipulated, death was caused by either the obstruction of the endotracheal tube or from an overdose of cyclopropane.
Essentially, the plaintiff is seeking a determination by this court, as a matter of law, that death did not result from the “inhalation of gas”, as that term is used in the policy of insurance.
Stated differently, the issue is whether the use of cyclopropane anesthetic gas in the instant case is to be considered the taking of poison or the inhaling of gas, voluntarily or involuntarily and thus a cause of death being a risk not assumed under the terms of the policy of insurance for the purpose of the accidental death benefit. What is “gas”? “The term ‘gas’ as used in an exception clause, should be given its common and ordinary meaning, and so defined covers any substance in its aeriform state having noxious or poisonous qualities, as distinguished from smoke or dust which is matter in a solid state finely diffused through the air” (Couch’s Cyclopedia of Insurance Law [2d ed.], vol. 10, § 41; 525).
Counsel for the plaintiff submits that there ¡must be a distinction between therapeutic gases and poisonous or noxious gases having no therapeutic value. 'Counsel for the plaintiff takes the position that cyclopropane is a therapeutic gas and thus not within .the purview of risks not assumed under the policy of insurance.
The plaintiff cites the case of Life & Cas. Ins. Co. of Tennessee v. Brown, (95 Ga. App. 354) in support of this motion. Though in the Brown case asphyxiation and consequent anoxemia were due to a foreign body which lodged in the endotracheal tube while being administered ether, the court addresses itself to the same issue before this court (p. 355): “ On consideration of the gen *719 eral demurrer the sole'question for determination is whether or not these facts alleg’e death by accidental means under the terms of .the policy of insurance so as to result in liability against the insurance company. Policies of insurance must be construed against the insurance company. The words in the exclusion provision ‘ taking of poison or inhaling of gas,’ given their usual and ordinary significance, do not exclude the insured from coverage because ether was administered to him in the course of the operation for the purpose of promoting anaesthesia. The word ‘ gas ’ as used in such context, ordinarily refers to that type of gas, both natural and artificial, which is used for fuel and installed in homes throughout this country, and which is considered a dangerous instrumentality when allowed to escape because it results in death by asphyxiation. ’ ’ (Life & Cas. Ins. Co. of Tennessee v. Brown, supra.)
Counsel for the defendant cites the case of Porter v. Preferred Acc. Ins. Co. of N. Y. (109 App. Div. 103, affd. 186 N. Y. 599).
There is a significant distinction between the Porter case and the case at bar. In Porter, in addition to the insurer not assuming the risk of -death caused by the inhalation of gas, the policy excluded death caused by ‘ ‘ any anesthetic. ’ ’ In that case, where death resulted from the inhalation of anesthetic, and in view of the expressed words of the policy, the court found no liability on the part of the insurer.
It is also a well-established rule of law every doubt or ambiguity in an insurance policy is to be resolved in favor of the insured (Porter v. Preferred Acc. Ins. Co. of N. Y., supra, p. 105; Life & Cas. Ins. Co. of Tennessee v. Brown, 95 Ga. App. 354, supra).
The court is of the opinion that therapeutic or anesthetic ‘ ‘ gases ’ ’ are not within the purview of the exclusion or risks not assumed provisions of the insurance policy at issue in this case.
Plaintiff’s motion for summary judgment is granted.