### 25260. CORDELL *v.* METROPOLITAN LIFE INSURANCE CO.

DECIDED JULY 16, 1936.

*Julius Rink,* for plaintiff. ·

*Barry Wright, Jack Rogers,* for defendant.

STEPHENS, J. On October 16, 1934, Henry Cordell filed a petition against the Metropolitan Life Insurance Company. The defendant demurred on general and special grounds. Before this demurrer was passed on, the plaintiff offered an amendment which was allowed subject to demurrer. The defendant renewed the first demurrer, and demurred on additional grounds to the petition as amended. The court sustained all the grounds of both demurrers, except one special ground, and dismissed the petition. The plaintiff assigns error upon the sustaining of each and every ground of the two demurrers. In the petition as amended the plaintiff alleged that he was an employee of Consolidated Textile Corporation, and while so employed he received a certificate of insurance based upon a group-life policy issued by the defendant to the textile corporation; that in February, 1930, he was compelled to cease work by reason of total disability, he having contracted pulmonary tuberculosis, gastritis, anemia, chronic dyspepsia and chronic colitis; that during all the time since ceasing work with the textile corporation he has been totally unable to do any work requiring strength or energy; that he is now totally disabled and believes he will be totally disabled during the remainder of his life; that during the early part of his disability he received the temporary benefits stipulated in the policy; that in the application for said temporary benefits he notified the defendants of his physical condition and his disabilities; that while he was an employee of the textile corporation this corporation deducted from his wages twenty cents per week as the premium on his certificate, and after he became totally disabled from work he continued to pay to the textile corporation the charges assessed against said certificate for a year or more, that the defendant continued to accept the payment of the premiums on his certificate until the textile corporation refused longer to accept the premiums from him, although he continued to make tender of them; that on September 9, 1933, he made formal demand on the defendant for payment of the total and permanent benefits stipulated in the certificate; that he is entitled under said certificate

to $25.52 per month for a period of twenty months; that since the date of his demand thirteen monthly payments have matured, aggregating the sum of $331.76; that this demand was made by his attorney, who made a second demand on September 22, 1933, by letters which were attached to the petition as exhibits; that his insurance under said certificate was of full force and effect when he ceased work, and by reason of his permanent and total disability existing at the time he ceased work and its continuance to the present time, and said disability being of such permanent character that he will be totally and permanently disabled for life from doing all or any substantial part of the work he had been doing before becoming disabled, he is entitled to recover upon his certificate on which he had paid all premiums up to the time of becoming totally disabled, and for approximately two and one half years thereafter, and until his further payments were refused by the textile corporation; that he had complied with all the requirements both of the certificate and of the statute in giving notice to the defendant and of making and filing with the defendant his formal proof of disability as required by the certificate and by statute; that though he furnished the defendant with due proof of disability the defendant refused to pay the total benefits or any part of them; that the defendant finally refused to pay in a letter dated January 25, 1934, copy of which is attached to the petition; that an application was made to the defendant by the textile corporation upon which the group-life policy was based and issued, said application together with the group policy and the certificate held by the plaintiff constituting the entire contract; that he can not set out a copy of the application, because it is not in his possession; that he is fifty-two years old; that he made demand on the defendant for payment of the benefits stipulated in his certificate more than sixty days before the filing of the petition, and by reason of the failure of the defendant to pay the benefits within sixty days from the date of his demand he is entitled to recover penalties not in excess of 25 per cent. of the sum due him under his certificate; and that he also is entitled to a reasonable sum for the use of counsel for bringing and prosecuting his suit.

In his amendment he alleged that the provisions of the certificate and the group life policy with respect to notice of total disability, presenting proof of his disability, and requiring suit to be

brought within a stipulated time, were waived by the defendant's permitting and requesting proof of the condition of the plaintiff's health; that while the group policy does require that notice of total and permanent disability be presented in a specified time and that suit be brought upon refusal to make adjustment within a fixed time, either or both of these conditions would have been available to the defendant as a complete defense to this action had the defendant stood upon the letter of the contract, but that in accepting proof of his total and permanent disability, after the right of the defendant to rely on the terms of the contract, was a waiver of those terms, and his requests and directions to obtain certain specified proof from physicians named by the defendant, and for which examination the plaintiff contracted and paid, after the stipulations in the contract had become operative, constituted a waiver of those provisions on which the defendant could have legally relied, and which would have been a complete bar to any recovery on the certificate; that even though the contract provided that proof of disability should be filed within a certain time and that suit must be instituted within two years from the date of total disability, the defendant accepted proof of disability furnished by the plaintiff, and requested Dr. E. H. Hise to make an examination of the plaintiff since the expiration of the two-year period fixed by the contract; that Dr. Hise did examine and make a report of the physical condition of the plaintiff on November 14, 1933, upon an order of the defendant dated October 10, 1933, the plaintiff reporting to Dr. Hise on several occasions between the two dates; that the certificate of Dr. Hise stated that the plaintiff was totally and permanently disabled; that on November 22, 1933, he was requested by the defendant to furnish statements from Doctors J. S. Alsobrook, S. P. Kitchens, and E. H. Hise, stating in said letter that they were assigning an alternate doctor to examine the plaintiff for the defendant; that on October 5, 1933, he received from the defendant a letter stating that the policy was no longer in force, and that for him to be eligible for the benefits claimed he should have become totally and permanently disabled while in the employment of the textile corporation and while the policy was alive, but stating that, if such was the contention of the plaintiff, "we welcome proof to that effect," and that the insurance company was assigning one of its doctors to examine the plaintiff. It was further alleged that

such facts amounted to a waiver of the stipulations as to furnishing and accepting proof of the disability, as well as the filing of suit on declining to pay the claim, the original suit having been filed immediately upon the final refusal to pay the claim; and that the defendant is now estopped to rely on the strict provisions in the contract and now to plead the statute of limitations as to filing proof of disability, demand, and notice of total and permanent disability; that he furnished on request of the defendant, besides the certificate of Dr. Kitchens of April, 1930, two certificates from Dr. Kitchens dated January 30, 1934, and February 15, 1934, both of which certificates are in the possession of the defendant, and show pulmonary tuberculosis; that he furnished one certificate from Dr. D. W. Hammond, one from Dr. J. S. Alsobrook, one from Dr. C. G. Evans, as well as the certificate of Dr. E. H. Hise by request of the defendant; that all of these certificates were furnished since October 5, 1933, and before the filing of the suit, and all show permanent and total disability, and all of them are in the possession of the defendant.

Attached to the petition were copies of two letters from Mr. Rink as attorney for Henry Cordell, addressed to Metropolitan Life Insurance Company, No. 1 Madison Avenue, New York, N. Y. The letter of September 9, 1933, requested the defendant to send to the writer blank forms for proof of permanent and total disability of Cordell, which had existed since February, 1930, for which reason he insisted he was entitled to the total and permanent benefits provided for in his certificate. The letter of September 22, 1933, repeated the request for blank forms, and said: "I will appreciate these forms, or a reasonable reason why you refuse to furnish them for the purpose stated." The letter of October 5, 1933, from the defendant to Mr. Rink said: "This supplements our September 27th letter. This policy under which Mr. Cordell was insured with us is no longer in force. In order, then, for him to become eligible for benefits, he would have to become both totally and permanently disabled while in the employ of the Consolidated Textile Corporation, and while insured under this policy. If you contend that such is the situation in your client's case, we shall welcome such medical proof to that effect as you can submit. Without prejudice to any rights or defenses we may have, we inclose several of our forms 0347. One of these forms should be completed in

detail by your client, his present attending physician. The remaining forms by any other doctors who have attended, treated, or examined him since the inception of his disability. Meanwhile we are assigning one of our doctors to examine Mr. Cordell." Signed, E. J. Spellman, Supervisor Permanent Disability. The letter of November 22, 1933, from the defendant to Mr. Rink said: "This acknowledges November 18th letter with enclosure. However, we note that your client also received treatment from Drs. Alsobrook, G. B. Kitchens, and Dr. E. H. Hise. Therefore, before we can proceed further with the claim, it will be necessary that we be furnished with statements from all those doctors on the inclosed form 0347. Meanwhile we are assigning an alternate doctor to examine your client." Signed E. J. Spellman, Supervisor Permanent Disability. The letter of January 25, 1934, from the defendant to Mr. Rink contained these statements: "We have no proof that your client has been totally and continuously disabled since prior to the cancellation of his certificate, and that such disability will be permanent. Dr. Evans certifies that he treated this man from May 5, 1930, until November 24, 1931, and then from May 2, 1933, until October 17, 1933. Therefore, unless we can be furnished with medical proof covering the entire period of disability, we are unable to give this claim further consideration. In writing this letter, of course, we waive no rights or defenses, which this company may have under the policy, in event of suit." Signed, E. J. Spellman, Supervisor Permanent Disability. The provisions of the group policy on which the defendant mainly relied were as follows: "Written notice of sickness of or injury to any employee insured hereunder must be given to the company immediately after the date such sickness or injury occurred. . . . Affirmative proof of such sickness or injury must be furnished to the company within thirty days after such notice. . . No action at law or in equity shall be brought for recovery under the provisions of this policy for temporary disability or for total and permanent disability prior to the expiration of sixty days after proof has been filed, in accordance with the requirement of this section, nor shall such action be brought at all unless brought within two years from the expiration of the time within which such proof is required to be filed."

The four letters written to the plaintiff's attorney and signed "E. J. Spellman, Supervisor Permanent Disability" must be taken

as letters of the defendant, as the petition charges, no question being raised in any of the demurrers as to the authority of the agent who signed the letters. Another common feature of these letters is that the investigation which they invited and promoted related entirely to the extent and duration of the alleged disability. Except for certain expressions hereinafter noticed, there could be no tenable contention that the defendant, being fully cognizant of all the facts concerning the policy except the extent of the disability, and accepting proofs as to this fact, would not thereby waive such accrued defenses as failure to give immediate notice, or failure to make proofs within the time specified in the policy, or failure to bring suit within the time limited in the policy. A case similar to this is *Stanley* v. *Sterling Mutual Life Ins. Co.,* 12 *Ga. App.* 475 (77 S. E. 664). In the case at bar the letter of October 5, 1933, contained this sentence: "Without prejudice to any rights or defenses we may have, we enclose several of our forms 0347;" and the letter of January 25, 1934, contained this sentence: "In writing this letter, of course, we waive no rights or defenses, which the company may have under the policy, in event of suit." It will be noticed that the letters of November 2, and November 22, 1933, contained no such reservation. But the case can be determined as if the two November letters had contained the statement which was in the October letter. It is contended for the defendant in error that the reservation of its defenses prevented any waiver from taking effect. It is true that in order for a waiver to occur there must be an intention to waive. The difficulty is that the defendant in this case evinced an intention to waive and at the same time said it did not intend to waive. It is a case of actions speaking louder than words. It has been decided by the courts of several States that a general reservation of defenses, like that in the present case, is wholly ineffective to prevent a waiver. Shearlock *v.* Mutual Life Ins. Co., 193 Mo. App. 430 (182 S. W. 89) ; Marthinson *v.* North British &c. Ins. Co., 64 Mich. 372 (31 N. W. 291) ; Granger *v.* Manchester Fire Ins. Co., 119 Mich. 177 (77 N. W. 693) ; Corson *v.* Anchor Mutual Fire Ins. Co., 113 Iowa, 641 (85 N. W. 806) ; Home Fire Ins. Co. *v.* Kennedy, 47 Neb. 138 (66 N. W. 278, 53 Am. St. R. 521) ; Royal Ins. Co. *v.* Drury, 150 Md. 211 (132 Atl. 635, 45 A. L. R. 582). There is possibly some authority contrary to the foregoing cases. See Roth *v.* Mutual Reserve Life Ins. Co.,

162 Fed. 282; Weed *v.* London &c. Ins. Co., 116 N. Y. 106 (22 N. E. 229). Even these cases are distinguishable. In the Roth case there was a single letter in which it was stated that the policy had lapsed, and in which, as noted by the court, there was no invitation to the policyholder to incur expense. In the New York case, the company was ignorant of a fact which rendered the policy void; and the court said if the company had known this fact and proceeded as if to adjust, there would have been a waiver. In 26 C. J. 337, § 420, it is said that there is a conflict of authority on this question, but that the weight of authority is as held in the cases first cited above. In the case at bar the defendant required of the plaintiff a number of examinations by physicians, causing him trouble and expense, and even as late as January 30, and February 15, 1934, accepted certificates from an examining physician in response, no doubt, to its letter of January 25, 1934, asking for further medical proof. All this investigation would have been useless if the defendant intended to insist that the plaintiff could not maintain an action because of failure to comply with the conditions of the group policy in regard to notice, proof of disability and time of bringing action. Waiver is simply an election not to insist on the forfeiture of the insurance. Some courts hold that an estoppel arises against the defendant by conduct such as is shown in this case. Whether it be called waiver or estoppel is not important.

The provision in the policy relied upon by the defendant as a bar to the suit is the one providing that action must be brought on the policy "within two years from the expiration of the time within which such proof [of disability] is required to be filed." The defendant, having waived the time within which proof of disability should be filed by its conduct requiring the plaintiff to get the certificates as to health from the various physicians, necessarily waived the time within which proof of disability was required. Therefore the suit was not barred, since it was clearly brought within two years after these certificates of health were procured and delivered to the defendant. Besides, it is stated in 7 Cooley's Briefs on Insurance (2d), 6858: "Conduct of the insurer after the expiration of the policy limitations, by which the insured or beneficiary is induced to go to trouble or expense in the procuring of proofs of loss, etc., will amount to a waiver of the clause limiting

the time within which an action may be commenced." It is there stated, in reference to the case of Bowen *v.* Preferred Acc. Ins. Co., 82 App. Div. 458 (81 N. Y. Supp. 840), that "a mere statement by the company, made after the expiration of the stipulated time, to the effect that 'there should be no difficulty in the way of our arriving at an understanding as to the merits of the claim,' was considered as one of the elements on which the waiver was founded."

Nothing herein held is in conflict with *Firemen's Ins. Co.* v. *Blount,* 182 *Ga.* 459 (185 S. E. 717). In that case, which was a suit to recover on a fire-insurance policy, there was an *express* agreement made by the parties, after the fire, which, in the language of the court, "expressly stipulated that the insurer would not waive or forfeit any of the terms or conditions of the policy by investigating and ascertaining the amount of loss or damage or other matters relative to the claim of the insured." This provision as to the limitation within which suit should be brought is not a statutory provision, but is a contractual provision in the policy. It appears from the petition that the plaintiff had never had possession of the policy, did not know its provisions, and was ignorant of the limitations therein respecting the filing of proofs of disability and institution of action upon the policy. Under these conditions it would be inequitable to allow the insurance company to insist on the contractual provision with respect to the time within which suit should be brought. The company is estopped from so doing. Under the allegations of the petition the company is barred from defending the suit on any of the grounds asserted in the demurrers.

■ In the fourth ground of the first demurrer and the eighth ground of the second demurrer it is insisted that notice of temporary disability could not supply the place of a notice of permanent disability. This point is well taken. It was not error to sustain these grounds; although, in view of the plaintiff's amendment setting up a waiver, this matter is not important.

■ The fifth ground of the first demurrer and the second ground of the second demurrer raise the point that the premiums paid by the plaintiff after leaving the employment of the textile corporation were paid to it, and not to the defendant. The plaintiff amended paragraph 4 so as to allege that the premiums paid to the textile corporation were received by the defendant. These al-

legations were relevant on the issue of waiver, and the court erred in sustaining these grounds. The seventh, eighth, ninth, and tenth grounds of the first demurrer and the first ground of the second demurrer were obviated by the agreement between counsel, as shown in the bill of exceptions, that the group policy or the material portions thereof should be treated as though they were attached to the petition, and the group policy is specified as part of the record material to a clear understanding of the errors complained of, and a copy is contained in the record under the certificate of the clerk. The court erred in sustaining these grounds.

The eleventh ground of the first demurrer goes to the allegations in the petition claiming damages and attorney's fees. These allegations were insufficient, because they did not show a lapse of sixty days between the date of a demand for payment of the insurance and the date when the suit was filed. The plaintiff's amendment alleged that the original suit was filed immediately on the final refusal to pay the claim. The court did not err in sustaining this ground. *National Casualty Co.* v. *Borochoff,* 45 *Ga. App.* 745 (165 S. E. 905); *Life & Casualty Insurance Co.* v. *Smith,* 53 *Ga. App.* 838 (187 S. E. 288).

The third, fourth, fifth, sixth, and seventh grounds of the second demurrer raise substantially the same question, to wit, that the allegations of the amended petition were not sufficient to show a waiver of the conditions of the group policy. According to the ruling now made on this question, the court erred in sustaining these grounds. The petition was good in substance, and the court erred in sustaining the general demurrer and dismissing the action.

*Judgment reversed. Sutton, J., concurs. Jenkins, P. J., dissents.*