## 27388. HULME *v.* MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION.

DECIDED MAY 3, 1939.

*J. T. Sisk,* for plaintiff.

*Howard B. Payne, Carey Skelton, J. H. & Emmett Skelton,* for defendant.

SUTTON, J.   This is the second appearance of this case before this court.   See *Mutual Benefit Health &c. Asso.* v. *Hulme, 57 Ga. App.* 876 (197 S. E. 85), for statement of the case and opinion. It was then held: "1.   The provisions of a policy of insurance requiring the furnishing of proof of loss to the home office of the insurer within ninety days after the death of the insured from accidental means, and making a strict compliance therewith a condition precedent to recovery, are valid, and the beneficiary is bound thereby unless the circumstances are such as to excuse a delay in complying therewith. 2.   The facts set forth in the amendment to the petition do not show a legal excuse for the failure of the beneficiary to furnish proof of loss within the time required by the policy of insurance, and the court erred in overruling the demurrer of the defendant; and as the petition did not set forth a cause of action, the court also erred in overruling the renewed general demurrer of the defendant."   Before the judgment of this court was made the judgment of the trial court, the plaintiff, on July 15, 1938, filed a further amendment to count 1 of her petition, in which she alleged substantially as follows: That immediately after and during the week of the death of Hoyt Pulliam, her son, the insured in a policy in which she had been made the beneficiary, she, believing that the policy sued on was a policy of life insurance, sent her husband, J. T. Hulme, with said policy to Elberton for the purpose of making out proofs of loss occasioned by the death of the said Hoyt Pulliam and in order to collect the face value of said policy because of what she then believed to have been the natural death of the insured; that the said J. T. Hulme, acting for plaintiff, went to the office of Clark Edwards Jr., ordinary of Elbert County, for the purpose of obtaining assistance in

making out said claim and proof of loss; that the said J. T. Hulme was then and there informed by Edwards, the ordinary, that the policy covered accidental death only, and was not an ordinary life-insurance policy; that he procured from his files the certificate of death of Hoyt Pulliam, the insured, and read the same to J. T. Hulme and informed him 'that said certificate of death showed that the principal causes of Hoyt Pulliam's death were acute intestinal obstruction and appendicitis, and that contributory causes of importance were peritonitis and paralytic ileus, and that death from these causes was not accidental, and that therefore there could be no recovery on the policy (which insured against death caused, independently of all other causes, from bodily injuries sustained during the term of the policy, through purely accidental means) ; that the said J. T. Hulme immediately and on the same day consulted Dr. W. A. Johnson and Dr. D. N. Thompson, who were the physicians attending Hoyt Pulliam during his last illness, and that they confirmed what was shown by the certificate of death aforesaid, signed by Dr. W. A. Johnson and filed with the local registrar of the bureau of vital statistics of the Georgia Department of Public Health on July 30, 1936. A copy of the certificate was attached to the amendment, and showed that "the principal cause of death and related causes of importance in the order of onset and duration of each" were acute intestinal obstruction and appendicitis, and that "other contributory causes of importance" were peritonitis and paralytic ileus, the certificate purporting to have been signed by W. A. Johnson, and filed July 30, 1936, as shown by signature of Julia Webb, local registrar.

The amendment further alleged that at no time, from the death of Hoyt Pulliam until on or about April 12, 1937, did the plaintiff know, suspect, or have any reason to know or suspect the presence of an embolus in the body of the said Hoyt Pulliam or the release of the embolus into the blood stream of Hoyt Pulliam and its transmission to his heart, causing his death as alleged in the petition as amended heretofore, and that said information was withheld from the plaintiff until April 12, 1937, by the said Dr. Johnson and Dr. Thompson, when Dr. Thompson, one of the two physicians who attended Hoyt Pulliam, disclosed to plaintiff's counsel that while acute intestinal obstruction and appendicitis were the primary causes of his death, neither of them was the immediate

cause, but that an embolus, which formed in or upon the body of the deceased and was transmitted through his veins into his heart, caused his death, and that same was the result of an accident as aforesaid; that plaintiff had a right to rely, and did rely, on the contents of the said certificate of death and the statements of the two said attending physicians as to the cause of Hoyt Pulliam's death, made to her husband, J. T. Hulme, as aforesaid, and had no reason to question or suspect that the cause of Hoyt Pulliam's death was otherwise than as stated in said certificate of death and by said attending physicians, as she knew that the deceased had been operated on for appendicitis and had suffered with an intestinal obstruction and had been treated by said physicians for such ailment; that J. T. Hulme communicated the said information to plaintiff on the day he gained the information, and that plaintiff relied on it as being true.

The defendant filed a general demurrer to the amendment, on the grounds that the allegations thereof are not sufficient to excuse the plaintiff from giving the defendant "immediate notice" of the death of the insured, as required by the policy, and that they are not sufficient to excuse plaintiff's failure to make proof of loss within ninety days from the date of the insured's death as required by the policy. The defendant also filed a general demurrer to the petition as amended, on the following grounds: That it did not show that before suit was filed, and within ninety days from the date of the death of the insured, the plaintiff complied with provisions 5, 6, and 7, which were contained in the policy, the same being as follows: "5. Written notice of injury or sickness on which claim may be based must be given to the association within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the association. 6. The association upon receipt of such notice will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character, and extent of the loss for

which claim is made. 7. Affirmative proof of loss must be fur-
nished to the association at its said office, in case of claim for loss
of time from disability, within ninety days after the termination
of the period for which the association is liable, and in case of
claim for any other loss within ninety days after the date of such
loss;" and showed that plaintiff did not comply with the provisions
of the following provisions of the policy, conditions precedent to a
recovery, and that having failed to comply plaintiff forfeited any
right to indemnity; section 14, which provides that "no action at
law or in equity shall be brought to recover on this policy prior to
the expiration of the sixty days after proof of loss has been filed in
accordance with the requirements of this policy, nor shall such ac-
tion be brought at all unless brought within two years from the ex-
piration of the time within which proof of loss is required by the
policy;" section (b), which provides that "strict compliance on the
part of the insured and beneficiary with all the provisions and
agreements of this policy, and the application signed by the in-
sured, is a condition precedent to recovery, and any failure in this
respect shall forfeit to the association any right to any indemnity."

The court sustained the general demurrer to the petition as
amended, reciting in its order that the allegations as to the exer-
cise of due diligence in ascertaining the cause of the death of the
insured made an issue for determination by a jury, but that
"whether or not this letter [under date of April 22, 1937] from
the association should be construed as a denial of liability or posi-
tive refusal to pay, it puts the plaintiff on notice that the require-
ments as to notice and proof of loss will not be waived, and it was
therefore incumbent upon the plaintiff, within fifteen days from
the refusal of the defendant to furnish blanks for proof of loss, to
submit to the association written proof covering the occurrence,
character, and extent of the loss for which claim is made, and that
section 14 of the policy provided that no action shall be brought to
recover on the policy prior to the expiration of sixty days after
proof of loss has been filed in accordance with the requirements of
the policy." The exception is to the judgment sustaining the gen-
eral demurrer.

The questions here presented are: Do the allegations of the
petition as amended fail to show a reasonable excuse for the plain-
tiff's failure to give immediate notice of the death of the insured by

accidental means? Under the circumstances shown, was the plaintiff barred from recovery by reason of not having furnished proof of loss, in terms of the policy, before bringing the present suit? We think that, as held by the trial judge, the allegations of the petition make an issue for a jury as to whether or not the plaintiff was excusable in not immediately notifying the defendant that the death of the insured was from accidental means, and in not furnishing written proof of loss within ninety days from the death of the insured. It is shown by the amendment that the deceased was operated on for appendicitis, and that although, in the same week in which the insured died, the plaintiff sent her husband to ascertain from the two physicians who attended the insured in his last illness the nature and cause of his death, the only information which they gave, and which was thereupon communicated by her husband to the plaintiff, was that, as shown in the death certificate filed with the local registrar of the bureau of vital statistics, the principal cause of the insured's death was acute intestinal obstruction and appendicitis, other contributing causes being peritonitis and paralytic ileus. Nothing in the nature of accidental death was suggested, and it is alleged that at no time did the plaintiff suspect, or have cause to suspect, that an embolus had formed in the body of the insured and had been released into his blood stream and into his heart and caused his death. "The questions of the sufficiency of the excuse offered, and the diligence of the beneficiary in giving the notice after the removal of the disability, are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case." *North American Accident Insurance Co.* v. *Watson,* 6 *Ga. App.* 193, 196 (64 S. E. 693) ; *Pilgrim Health &c. Ins. Co.* v. *Chism,* 49 *Ga. App.* 121 (3) (174 S. E. 212). In the present case we think that it was a jury question whether the plaintiff was justified in relying on the information furnished by the attending physicians, and making no independent investigation at the hospital where the insured was operated on or elsewhere. Certainly it could not be said as a matter of law that the plaintiff was derelict. It appears that it was not until April 12, 1937, that she, through her counsel, learned from Dr. Thompson that the immediate cause of the insured's death was an accident, that is, that an embolus formed in his body and, being released into his blood stream and into his

heart, brought about his death. On that day her counsel notified the defendant by letter that it had come to the knowledge of the plaintiff, beneficiary under the policy, that the death of the insured was caused by accidental means.

On the question whether or not the plaintiff is barred because of not having furnished written proof of loss before bringing suit and within the time prescribed by the policy, the following is applicable: The filing of the proof of loss was by the policy made a condition precedent to recovery. It provided that such proof of loss must be furnished within ninety days after the death of the insured from accidental means. It is the law of this case that the plaintiff was bound to comply therewith, unless the circumstances were such as to excuse a delay. Even if, in the opinion of the jury, the plaintiff was, under the circumstances alleged, not derelict in not ascertaining until April 12, 1937, that the insured died from accidental means, it would still be her duty, not only to immediately notify the defendant of such occurrence, but ordinarily to furnish written proof of loss within a reasonable time after learning the true cause of the insured's death. The petition alleges, however, that although her counsel's letter of April 12, 1937, requested that the defendant furnish its regular forms to enable the plaintiff to make proper proof of loss, unless the company wished to decline payment, the defendant, without sending the necessary forms, replied in part on April 22, 1937, as follows: "The contract which Mr. Pulliam had required notice of an accidental injury to be given within twenty days. It required notice of death due to accidental means to be given immediately. It required proofs of loss to be filed within ninety days of death. None of these conditions have been complied with. It would be impossible for the association to waive these requirements at this late day; and we are therefore not furnishing blanks, nor attempting to investigate or determine the correctness of the contention made in your letter." The trial judge apparently interpreted the defendant's letter to mean that the requirements as to notice and proof of loss within the time specified in the policy would not be waived, and then, misconceiving that the policy required the plaintiff to submit to the defendant written proof of loss *within fifteen days* of the date of the defendant's refusal to furnish its own blanks, sustained the general demurrer because it did not appear from the petition that the plaintiff had

furnished proof of loss at any time before bringing the present action. The fifteen days referred to in the policy was the time in which the defendant should furnish its own forms to the plaintiff, after being notified of the death of the insured from accidental means, and thereafter, if the defendant did not furnish its own forms, the plaintiff was at liberty to make a written report on any form she chose, but was under the duty of furnishing such proof of loss within ninety days after the death of the insured. The trial court correctly interpreted the defendant's letter to mean that it would not waive the requirements of the policy as to notice and proof of loss; but we think it goes much farther and puts the plaintiff on notice that liability was denied and no claim would be paid. The plaintiff is, in effect, informed that it would be useless to furnish written proof of loss, because the time for so doing had expired, according to the provisions of the policy, and defendant did not waive compliance therewith, and consequently it was not forwarding the necessary blanks and would not attempt to investigate or determine the correctness of the contention that the insured died from accidental means. In short, it would do nothing, because it had no intention of paying a belated claim, and the preparation of proof of loss would be an idle ceremony. Nevertheless the plaintiff is not without redress if the jury determine, upon proof of the allegations of the petition, that she showed a reasonable excuse for not giving the notice and furnishing the proof of loss in terms of the policy; because it is the law, that, while the proof of loss must ordinarily be made in a reasonable length of time after the conditions excusing performance have ceased to exist, the act of the insurer in denying liability or refusing to pay makes the filing of proof of loss unnecessary. *Life Insurance Co. of Virginia* v. *Williams,* 48 *Ga. App.* 10 (2) (172 S. E. 101); *Travelers Insurance Co.* v. *Lancaster,* 51 *Ga. App.* 390 (180 S. E. 641); Code, § 56-831.

The defendant contends that the general demurrer was properly sustained for the reason that the death of the insured was not shown to have been caused from an accident "independently and exclusively of disease and all other causes" as provided in the policy, but was the result of two joint forces inasmuch as but for the appendicitis death would not have ensued. While the appendicitis operation may have made possible the forming of an

embolus, it is well settled that the secondary condition can not be said as a matter of law not to be the immediate cause of death. *Hall* v. *General Accident Assurance Corporation,* 16 *Ga. App.* 66, 74 (85 S. E. 600) ; *Pacific Mutual Life Insurance Co.* v. *Meldrim,* 24 *Ga. App.* 487 (101 S. E. 305) ; *Continental Casualty Co.* v. *Rucker,* 50 *Ga. App.* 694 (179 S. E. 269). A cause of action was set out in the petition as amended, and the court erred in sustaining the general demurrer.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*