28755. HULME, administrator, *v.* MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION.

■■■■ ■■■■■■■■

■■■■■■■■■■■■

DECIDED MARCH 8, 1941.

■■■■■■■■■■■■

*J. T. Sisk,* for plaintiff.

*J. H. & Emmett Skelton, Carey Skelton, A. S. Skelton, Howard B. Payne,* for defendant.

SUTTON, J. Mrs. J. T. Hulme, as beneficiary, brought suit against Mutual Benefit Health and Accident Association on a policy of health and accident insurance, to recover for the death of her son, Hoyt Pulliam, by accidental means, the policy insuring him against "loss of life, limb, sight, or time resulting directly, and independently of all other causes, from bodily injuries sustained during any term of this policy, through purely accidental means, . . subject, however, to all the provisions and limitations hereinafter contained," and providing: "If the insured shall sustain bodily injuries as described in the insuring clause, which injuries shall, independently and exclusively of disease and all other causes, continuously and wholly disable the insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the association will pay: for loss of life . . $750," etc. The policy also provided for the giving of notice of the injury on which a claim might be based, and for proof of loss, the details of which, as well as a full statement of the pleadings, may be found by reference to a report of the case on its first appearance before this court (*Mutual Benefit Health &c. Asso.* v. *Hulme,* 57 *Ga. App.* 876, 197 S. E. 85), where the judgment of the trial court overruling a general demurrer of the defendant was reversed. Before the judgment of this court was made the judgment of the trial court, the plaintiff filed an amendment to each count of the petition, in which she set forth certain facts to show an excuse for not complying with the provision of the policy as to timely filing of proof of loss. The defendant filed a general demurrer to the petition as amended. The trial court sustained the demurrer, and this court reversed that judgment and held that the petition as amended set forth a cause of action. *Hulme* v. *Mutual Benefit &c. Asso,* 60 *Ga. App.* 65 (2 S. E. 2d, 750), to which reference may be made for a detailed statement of

the further pleadings in the case. The case thereafter came on for trial, and resulted in a verdict and judgment for the defendant after the court had withdrawn from consideration of the jury the second count of the petition. The plaintiff filed a motion for new trial, and by amendment added several special grounds referred to hereinafter. After the trial the plaintiff died, and J. T. Hulme, her husband, as administrator of her estate, was substituted as plaintiff.

■ The evidence on the trial showed that the insured had been operated on for appendicitis on May 25, 1936, in a hospital in Elberton, and was dismissed therefrom on May 29, 1936; that on June 6, 1936, he returned to the hospital, and it was found that the wound had reopened, that he had some temperature and possible infection of the wound, but after treatment and closing of the wound and apparent correction of some bowel obstruction he was discharged in about eight days; and that he was again admitted to the hospital on July 20, 1936, and continued quite ill until his death on July 29, 1936. There was sufficient evidence to show an adequate excuse for not filing the proof of loss in the time required by the policy; and the only pertinent evidence for consideration here is whether or not the death of the insured was caused by accidental means. Count 1 of the petition alleged that a night or two before his death an embolus became attached, from some accidental means, to the appendicitis wound, and from accidental means, independently and exclusively of all other causes, was separated from the wound by the insured falling from his bed to the floor, and was projected through the veins of his body, causing his death. Count 2 did not allege specifically the cause of the dislodgment of the embolus from the wound, but alleged that the embolus did become separated from the wound by accidental means independently and exclusively of all other causes, and was projected through the veins of the body of the insured to his heart, and caused his death.

In attendance upon the insured at the hospital were Dr. W. A. Johnson and Dr. D. N. Thompson. The plaintiff introduced in evidence a death certificate signed by Dr. Johnson, a copy of which was attached to the petition as a part thereof, and which disclosed that the immediate cause of the death of Hoyt Pulliam was "acute intestinal obstruction and appendicitis," other contrib-

uting causes being "peritonitis and paralytic ileus." Dr. Thompson testified, that about midnight on July 27, 1936, he found the insured out of his bed, but could not remember whether he was lying on the floor, sitting in a chair, or walking about; that there were some reddened areas on his right hip, which were rubbed with alcohol and which were probably caused by lying in bed; and that lying in bed causes soreness. The insured's mother testified that she never saw him fall out of his bed, but that on a visit to him she noticed his left side was bruised. Mrs. Claude Rhodes, the insured's sister, testified that she saw bruises on his left side along the hip. Additional testimony by Dr. Thompson. in connection with which he gave as his opinion that the death of the insured was caused by an embolus, was as follows: that the insured did not die from appendicitis or an abdominal obstruction; that he thought the cause of his death was an embolus, a blood clot that gets free in the circulatory system and flows in the circulation until it strikes some spot that stops it; that it is not possible for a layman or patient, without being told by a physician, to be aware of the presence of an embolus, and often it is not aware to a physician; that an embolus might come from a bruise, which causes blood to clot in one of the vessels and be discharged into the blood stream; that some movement or something of the kind of the patient might cause it to become unseated and begin its circulation through the system, but physicians do not know for sure; that there may be several theories, and the witness did not think any of them could be proved or disproved; that he did not suppose that Hoyt Pulliam knew that he had an embolus in his body; that the witness himself did not know it; that it would not have been possible for the insured to have purposely, knowingly, and designedly committed some act to release the embolus from its seat and be circulated through the blood stream and cause his death; that he thinks the release of a blood clot into the blood stream is an accident; that a pulmonary embolism is one in the pulmonary vessel, in the lungs; that such is a very uncommon accident following a surgical operation, and not to be expected; that if a person had been operated on for appendicitis and thereafter died from an embolus, the operation, in the opinion of the witness, would possibly have produced the embolus, and with no other cause known he would attribute it to the operation, but the

person might have bumped his head or something, or reached over and hit the railing, or struggled, any one of which things could have released the embolus and have caused his death, and it would have been voluntary or involuntary; that it would not have been possible for the person to have knowingly produced the release of the embolus; that in his opinion Hoyt Pulliam died from an embolus, and his death was sudden; that at the time he was out of bed on May 27, 1936, his condition was not bad; that he had one degree of temperature, a pulse of 106, and a respiration of 34, which is often seen, not uncommon at all; that there was nothing in his condition that indicated any cause of death other than the embolus, so far as the witness knew; that he performed the operation on Hoyt Pulliam, assisted by Dr. Johnson; and that he thinks that thereafter Dr. Johnson did more of the supervising of the patient than he did, although both looked after him; that the witness dropped in almost every day to see him; that the death rate from appendicitis, complicated with peritonitis, is much higher and complicates it a great deal; that an embolus is a thrombus that is set in motion and is moving and might be flaked off of the thrombus, and a person might have an embolus without an operation; that there is no way to make sure that Hoyt Pulliam had an embolus, except by a post-mortem examination; that there would be no way the witness could be absolutely sure that he died from an embolus, without an autopsy and finding the clot; that medicine is not an exact science; that peritonitis is always dangerous, and so are obstructed intestines; that paralytic ileus is paralysis of that part of the intestines that empties into the colon; that it is usually temporary, but if permanent the person will die; that when a blood clot forms in a vein from an operation there is always danger of an embolus; that after going over the charts kept at the hospital he would say that the vomiting there recorded did not produce an embolus, and in fact the day the insured died he had vomited very little, and showed an increase in appetite, and his bowels were moving some; that so far as the operation or any obstruction in his bowels was concerned he was all right; that it was thought that his vomiting was caused by an obstruction, paralytic ileus, and that he would overcome it; that the chances were that he would overcome it, and apparently he did overcome it; that these conditions did not cause his death.

because the day before he died good results were obtained from his bowel movements; that he thinks he told plaintiff's counsel that the primary cause of the insured's death was appendicitis, but that the immediate cause of it was an embolus; that he felt that way but the only way to be definite about it was to perform an autopsy; that the mere act of the insured getting out of bed might release the embolus, but the formation of a thrombus or blood clot on any part of the body is quite a different matter from its release into the blood stream, and the embolus can form and not be released, and can stay there and disappear, and it takes some mechanical means to set it in motion, and moving around in a bed could release it.

The second count of the petition having been withdrawn from the consideration of the jury, the verdict in favor of the defendant was not only authorized but was demanded under the allegations as made in the first count and the evidence introduced to sustain them. It was alleged that the accidental means by which the alleged embolus became separated from the insured's wound was a fall from his bed by the insured. This the plaintiff wholly failed to prove. The evidence of Dr. Thompson was only to the effect that he found the insured out of bed two days before his death, but in no wise suggested a fall. The testimony of two witnesses as to the presence of bruises on the side of the insured as he lay in bed could not possibly authorize a finding by the jury that such bruises were evidence of a fall from the bed. To say that they authorized such a conclusion would be to indulge in mere conjecture and imagination, especially as the attending physician testified that they were such as might reasonably result from lying in bed. Furthermore, opposing the case as laid, the plaintiff herself introduced in evidence a certificate of death signed by one of his attending physicians, Dr. W. A. Johnson, in which the death of the insured was certified to have been caused by "acute intestinal obstruction and appendicitis," other contributing causes being "peritonitis and paralytic ileus." The introduction of this evidence by the plaintiff as effectually precludes a recovery on the first count as if introduced by the defendant, there being no evidence which could reasonably authorize a finding that the insured fell from his bed, and in such circumstances the verdict returned was the only one that legally could be rendered. It follows that

the court did not err in overruling the general grounds of the motion for new trial.

■ Special ground 3 of the motion for new trial assigns error on the following instruction to the jury: "I charge you, gentlemen, that the plaintiff in this case can not recover on the second count to her petition as set forth in the amendment filed by her; and you will therefore not consider in your deliberations any recovery on this second count." It is contended that this court had already adjudicated that count 2 set forth a cause of action, and that the case should have been submitted to the jury under that count as well as under count 1. Grounds 4 and 6 involve the same question of law, and may properly be considered in this connection. The instruction to the jury not to consider the second count of the petition amounted to a direction of a verdict in favor of the defendant with respect to that count; and, error having been assigned thereon, the question whether or not the court erred is properly before this court. Counsel for the plaintiff contends that it has been adjudicated that a cause of action was set forth in count 2. Counsel for the defendant is of the opinion that it has been adjudicated only that it was a jury question whether or not the plaintiff showed a legal excuse for not furnishing in time the proof of death, and that it has not been adjudicated that count 2 set forth a cause of action for the death of the insured by accidental means. To the petition as amended on November 11, 1937, the defendant renewed its general demurrer on the ground that no cause of action was set forth. The petition did not set forth a cause of action in either count if it failed to allege a case of death by accidental means, or if it was not shown that proof of loss was filed in the time required by the policy, unless allegations were made which the jury would be authorized to find showed a legal excuse for not filing the proof of loss in time.

The argument before this court on the first appearance of the case, on the merits of the general demurrer, was devoted to a consideration of whether or not the allegations of the petition as amended sufficiently showed a legal excuse for not making a timely proof of death. This court then ruled that the petition did not show such an excuse, and for that reason alone reversed the judgment overruling the general demurrer. Before the judgment of

this court was made the judgment of the trial court the plaintiff amended each count of the petition by alleging facts which, as this court subsequently ruled (60 *Ga. App.* 65, supra) were sufficient to authorize a finding that the plaintiff was legally excusable in not immediately notifying the defendant that the death of the insured was from accidental means, and in not furnishing written proof of loss within the time required by the policy of insurance. The defendant contended that the general demurrer was properly sustained, for the reason that the death of the insured was not shown to have been caused from an accident "independently and exclusively of disease and all other causes," as provided in the policy, but was the result of two joint forces, inasmuch as but for the appendicitis death would not have ensued. It was held that. while the appendicitis operation may have made possible the forming of an embolus, the secondary condition could not be said as a matter of law not to have been the immediate cause of death; and that a cause of action was set out in the petition as amended. The general demurrer having attacked the entire petition, and the contention having been made that neither count set forth a cause of action for death by accidental means, the ruling of this court was applicable to both counts of the petition, and was not limited to count 1. Accordingly, if any evidence was introduced which would authorize the jury to return a verdict for the plaintiff on count 2, even though not on count 1, the court erred in withdrawing count 2 from the consideration of the jury. The plaintiff contends that the testimony of Dr. D. N. Thompson required the submission of the case to the jury under this count. in that he stated that in his opinion the death of the insured was caused by accidental means, namely, the accidental release of an embolus. which he thought must have formed on the wound. into the blood stream of the insured, being projected to his heart and causing his death. We do not think this contention can be upheld. While the doctor testified to the effect stated, he admitted on cross-examination that he did not know that the insured had an embolus, and that it could not be determined except by a post-mortem examination. It is thus apparent that the so-called opinion was merely a surmise, and was insufficent for a verdict to be predicated thereon. It is not based on any fact or symptom from which an inference could be drawn that an embolus existed, or that one

was accidentally discharged into his blood stream and into the heart of the insured. Unsupported by any facts or symptoms which would authorize the witness to form a conclusion that death resulted in the manner contended for by the plaintiff, without the necessity of resorting to an autopsy, it must be discarded as too insubstantial for the consideration of the jury. There being no evidence of death by accidental means, and the death certificate of Dr. Johnson affirmatively showing that death resulted from "acute intestinal obstruction and appendicitis," contributed to by "peritonitis and paralytic ileus," a verdict in favor of the defendant was demanded as a matter of law on count 2 of the petition. Accordingly, the court did not err in withdrawing count 2 from the jury, and in overruling grounds 3, 4, and 6 of the motion for new trial.

Special grounds 1, 2, 5, 7, 8, 9, and 10 of the motion for new trial do not require any ruling, inasmuch as the verdict in favor of the defendant was demanded as a matter of law.

*Judgment affirmed. Stephens, P. J., concurs. Fellon, J., concurs in the judgment.*