## 32451. METROPOLITAN LIFE INSURANCE COMPANY *v.* JACKSON.

Decided May 13, 1949.

*G. A. Johns, Smith, Partridge, Field, Doremus & Ringel,* for plaintiff in error.

*Joseph D. Quillian,* contra.

Sutton, C. J.   J. H. Jackson sued Metropolitan Life Insurance Company for $1666.67, alleging that he had lost the sight of his left eye in an accident, and that under the terms of an accident-insurance policy issued to him by the defendant insurance company he was entitled to payment of this amount. A copy of the insurance policy was attached to the petition. This policy provides, among other things, "indemnity for loss of life, limb, sight, or time, through injury by accidental means as herein limited and provided," in the principal sum of $5000, and a weekly indemnity of $25, "against the result of bodily injuries sustained while this policy is in force and caused directly and independently of all other causes by violent and accidental means." If the injuries do not wholly and continuously disable the insured, but "directly and independently of all other causes

and within 90 days from the date of the accident, result" in the "total and irrecoverable loss of sight of one eye," the company will pay "one third of the said principle sum." Written notice of the injury on which claim may be based must be given to the company within 20 days after the date of the accident causing the injury. Affirmative proof of such loss must be furnished to the company within 90 days after the date of the loss. By answer, the insurance company admitted the issuance of a Form A-1 Standard Accident Policy to the plaintiff, on November 13, 1933, and denied liability.

The case was tried before a jury, and the following evidence, in substance, was adduced: Sometime during the latter part of 1937 the plaintiff was injured in an automobile accident in South Carolina, and immediately after the accident he had a tingling sensation in his right arm and neck, and in a week or two he had a trembling situation in his eye. At the time of the accident the plaintiff and Dr. L. B. Sims, a chiropractor, were taking their meals at the same place in Greenville, South Carolina, and on the day after the accident the plaintiff consulted Dr. Sims, and complained of a sore neck, but this condition improved, and Dr. Sims heard nothing more about it. In June, 1939, the plaintiff called Dr. Sims over long distance telephone, and complained that his nerves "had gone all to pieces," and Dr. Sims gave him treatment on July 1, 1939, and for about three weeks thereafter. An X-ray picture and nerve tests were made. This doctor found that the plaintiff had a dislocation of the first and second cervical vertebrae, a fracture at the first dorsal vertebra in the spinal column and neck, and a spinal-column pressure affecting the nerve circuit at the base of the brain, and that the middle finger of each hand was becoming gradually limited in movement. Dr. Sims was of the opinion that the condition could only have been caused by a traumatic injury, that it could cause blindness in the left eye, and that the loss of sight could be sudden or gradual, and could happen within 90 days of an accident, or in a longer time. He testified that he was not an eye specialist, and that he did not examine the plaintiff's eyes, and that the plaintiff made no complaint to him about his eyes at the time he examined and treated him. The plaintiff testified that he could not tell when he lost the sight of his eye, and that

he was blind before he knew it. In August, 1943, Dr. Grady Clay operated on his eye, and after the operation advised him to use ponticain for the pain. With ponticain in his eye he could not see. After he stopped using ponticain, about March 1, 1944, the sight was gone. Dr. John Hugh of Johns Hopkins advised him that the sight in his eye was irrecoverable. After the accident in 1937 until sometime in 1943 he worked almost continuously. The documentary evidence includes correspondence between the plaintiff and the defendant insurance company, indicating that the plaintiff first notified the company about the accident in a letter dated January 20, 1944. In this letter claim was made for payments of $25 per week for disability. Various forms completed by the plaintiff and doctors are also included in the documentary evidence. It appears that Dr. Grady Clay removed a traumatic cataract from the plaintiff's left eye on August 24, 1943. It also appears from this evidence that the insurance policy was continuously in force from the date of issuance in 1933 until May 13, 1944. In a letter dated May 12, 1944, addressed to the plaintiff, and signed by Charles J. Haight, superintendent of claims, it was expressly stated that the defendant company did not find sufficient justification for waiving any of the policy conditions. In this same letter the company notified the insured that it was exercising its privilege of non-renewal, and that the policy would cease to be effective as of the renewal date of May 13, 1944. The plaintiff had already paid the premium for renewal to an agent of the company. There was an attempt by the company to refund the premium, but the plaintiff refused to accept the refund.

The jury returned a verdict for the plaintiff for $1666.67, judgment was rendered accordingly, and the defendant excepted to the overruling of its motion for a new trial.

■ ·A provision in an accident insurance policy, to the effect that certain losses must occur within 90 days after an accident, directly from the accident and independently of all other causes, in order for the insurance company to become liable for the specified indemnity, is valid. A similar 30-day provision in an insurance policy was upheld by this court in *Bennett* v. *Life & Casualty Ins. Co.*, 60 *Ga. App.* 228 (3 S. E. 2d, 794). For a

discussion of numerous rulings to the same effect in other jurisdictions, see 118 A. L. R. 334.

■ The provisions of the insurance policy in respect to furnishing the company written notice of the injury within 20 days from the time of the accident, and proof of loss within 90 days from the date of the loss, were entirely valid and enforceable provisions. See *United Benevolent Society* v. *Freeman*, 111 *Ga.* 355 (36 S. E. 764); *Travelers Ins. Co.* v. *Thornton*, 119 *Ga.* 455 (6) (46 S. E. 678); *Folds* v. *Fireman's Fund Ins. Co.*, 28 *Ga. App.* 323 (110 S. E. 925); *Metcalf* v. *National Union Fire Ins. Co.*, 29 *Ga. App.* 590 (116 S. E. 324). Although these provisions may be waived, and a refusal to pay the indemnity within the time required for proof of loss will amount to a waiver, a refusal to pay made after the time has expired for proof of loss is not a waiver of such proof. *Prudential Ins. Co.* v. *Sailors*, 69 *Ga. App.* 628 (26 S. E. 2d, 557). There are also exceptions in respect to the time of notice and furnishing of proof of loss, where it appears that it was impossible to comply with such provisions within the time required, but the facts in this case do not bring it within such exceptions. See *Pilgrim Health & Life Ins. Co.* v. *Chism*, 49 *Ga. App.* 121 (174 S. E. 212); *Hulme* v. *Mutual Benefit Health &c. Assn.*, 60 *Ga. App.* 65 (2 S. E. 2d, 750).

▪■ It appears from the evidence that the plaintiff lost the sight of his eye sometime during the time the insurance policy was in force and that this may have been the result of an automobile accident which occurred in 1937. The plaintiff testified that he did not know when the loss of his eyesight occurred, but it was about March 1, 1944, when he first discovered the loss of sight in his eye. The chiropractor who treated him in 1939 testified that he did not examine his eyes, but that the loss of sight could have occurred within 90 days from the time of the accident, or in a longer period. The testimony of the chiropractor establishes neither that the loss of sight occurred within 90 days from the time of the accident, nor thereafter. There is no evidence showing that the loss of sight occurred within 90 days from the time of the accident, and in this respect the plaintiff has failed to establish one of the material facts necessary for a recovery. There is no evidence showing that the plaintiff

furnished the insurance company with a written notice of any injuries within 20 days from the date of the accident, or that within 90 days from the loss of eyesight he furnished the insurance company with any proof of loss showing a loss within 90 days from the time of the accident. The evidence indicates that the first claim was made in a letter dated January 20, 1944, and that this claim was for payment in accordance with the weekly indemnity provisions of the insurance policy, and not for the loss of the sight of his eye. It does not appear that it was impossible for the plaintiff to comply with the requirements of the insurance policy as to written notice and proof of loss'; and, in a letter to the insured, dated May 12, 1944, the insurance company made it clear that it had no intention of waiving any of the requirements of the policy in this respect. However, since there is no evidence showing that the loss occurred within 90 days from the time of the accident, which was necessary under the terms of the policy in order for the insurance company to be liable, a consideration of whether or not there was a compliance with the requirements of the company as to notice and proof of loss is in reality immaterial. Under the evidence in this case, a verdict for the plaintiff was not authorized, and the trial judge erred in overruling the defendant's motion for a new trial.

None of the cases cited and relied upon by the defendant in error authorizes or requires a ruling different from the one here made. The *Pilgrim Health & Life Insurance Co.* and *Hulme* cases, both cited in division 2 of this opinion, involved situations where it was impossible for the beneficiaries to comply with certain requirements of the insurance contract involved within the time required. This was also true in the case of *Progressive Life Ins. Co.* v. *Haygood*, 53 *Ga. App.* 231 (185 S. E. 534). In *Stanley* v. *Sterling Mutual Life Ins. Co.*, 12 *Ga. App.* 475 (77 S. E. 664), and *Cordell* v. *Metropolitan Life Ins. Co.*, 54 *Ga. App.* 178 (187 S. E. 292), there were acceptances of proofs indicating a waiver In *New York Life Ins. Co.* v. *Bradford*, 55 *Ga. App.* 248 (189 S. E. 914), there was an absolute refusal to pay disability benefits, not predicated on any failure to furnish proof of loss. In *Schneider* v. *Metropolitan Life Ins. Co.*, 62 *Ga. App.*

148 (7 S. E. 2d, 772), there was an absolute denial of liability within the time required for the furnishing of proof. The cases cited from other jurisdictions involved accidents where it was impossible to show the exact date of the accident, but where it was shown that the accident · necessarily occurred during the term of the policy, and where there was no time-limitation clause in which the loss must occur after the date of the accident, or where such time-limitation clause, if a part of the policy, was not in issue. Such cases are discussed in the annotation in 64 A. L. R. 966, and in 29 Am. Jur., Insurance, § 935.

*Judgment reversed. Felton and Parker, JJ., concur.*