32787. GULF LIFE INSURANCE COMPANY *v.* BOLT.

DECIDED FEBRUARY 2, 1950.

*Joe D. Tindall, Wright, Rogers, Magruder & Hoyt,* for plaintiff in error.

*Elizabeth Brown, Henry J. Fullbright Jr.,* contra.

SUTTON, C. J. Charles N. Bolt Jr. sued Gulf Life Insurance Company in Floyd Superior Court on a contract of insurance, alleging that under the terms of the contract he was entitled to $256 on account of the loss of sight in his left eye as the result of a blow received on or about October 4, 1946, and that the defendant had failed and refused to pay him.

Certain provisions of the insurance policy were quoted in the petition, as follows: "If the insured, while no premium is more than four weeks in arrears, shall receive bodily injury solely by external, violent and accidental means and gives written notice to the company of such bodily injury within thirty

days after accident causing such injury; and within ninety days after such injury and as a direct result thereof independently and exclusively of all other causes, insured sustains any one of the losses enumerated below, and lives not less than thirty days after sustaining such loss; then upon receipt at the home office during the insured's lifetime of due proof that, not less than thirty days prior to receipt of such proof, the insured sustained in the manner, within the time and under the conditions hereinabove specified any one of the said losses, the company will waive payment of all premiums thereafter accruing on this policy, and without reducing the amount payable at death or maturity hereof, pay to the insured: For loss of both hands or both feet, or one hand and one foot, or sight of both eyes the amount of insurance in force under this policy on the date of such loss. If the loss consists of only one member, namely one hand, one foot or one eye, then the amount payable for such single loss shall be one-half of the sum payable for the loss of two members. No payment provided in this paragraph is ever in the aggregate to exceed the sum insured at the date of loss. Loss shall mean, with regard to hands and feet, dismemberment by severance through or above the wrist or ankle joints; with regards to eyes, the entire and irrecoverable loss of sight. These benefits shall not be payable if the loss resulted directly or indirectly from injury sustained or disease contracted while engaged in military or naval service during time of war; nor shall it be payable if this policy has been endorsed for paid-up insurance or extended insurance under its terms." The face amount of the policy is $512.

The defendant, in its answer, admitted the issuance of the insurance policy and that the same was in full force and effect at the time of the alleged injury; that written notice was received within 30 days after the alleged accident; and that it had refused to pay the plaintiff. Liability under the terms of the contract was denied.

The case was tried before a jury, and the evidence, insofar as the same is material to the issue here involved, is in substance as follows: Prior to October 4, 1946, the plaintiff could see out of both eyes. In addition to his statement to the effect that he could see out of both eyes, and the statements of his

mother and brother-in-law that prior to October 4, 1946, he had not had any trouble with his eyes and did not wear glasses, a physician testified that he had examined him several years prior and he could read, with either eye, and a nurse testified that when his eyes were tested in the infirmary at the Celanese Corporation of America on March 20, 1946, by a Snellen chart, he had a visual acuity of 20/30 in the right eye and 20/100 in the left eye. The plaintiff testified that while at work at the plant of the Celanese Corporation on October 4, 1946, he received a blow from some object across the bridge of his nose and eyes, and that he went to the plant infirmary and then to the Harbin Hospital in Rome, Georgia, where Dr. George B. Smith treated him; that when he left the hospital, shown by his mother's testimony to have been three days later, he could not see out of his left eye, and that he could not see out of his left eye at the time of trial, January 13, 1949. The plaintiff's mother and brother-in-law testified that since the accident the plaintiff's left eye had changed in appearance and had turned white. Dr. Thomas S. Harbin testified that he was an eye, ear, and nose specialist, and that he examined the plaintiff's eyes on January 7, 1949, found the right eye normal, and a completely opaque cataract on the left eye, with posterior synechia. He explained that posterior synechia means adhesion between the iris and the lens. According to this witness any number of different things could have caused this condition, and it was impossible for him to say whether it was directly or indirectly attributable to the injury. The plaintiff stated to him at the time of the examination that he was blind in this eye, and the witness was of the opinion that this was true. This witness also stated that it was obvious to anyone that there was no useful vision in the left eye now. Dr. George B. Smith testified that he was an eye, ear, nose, and throat specialist, and had been practicing as such for 40 years. He treated the plaintiff on October 4, 1946, and thereafter. On this date he found a slight abrasion of the left cornea, and severe contusions of the right cornea. The patient was hospitalized, given the usual treatment, the left cornea healed promptly, and the right healed without leaving noticeable scars. No examination of either eye to determine visual acuity was made until after the eyes had completely

healed; but, when the eyes were tested, vision was 20/30 in the right eye and 20/200 in the left eye. The witness was of the opinion that the loss of vision in the left eye was not caused by the accident, but by an old fundus lesion, and that such a condition would only develop after some months or years. He explained that the look of blindness in the eye was not there when he examined him, and that the cataract had developed since that time. This attending physician's sworn statement of November 12, 1946, which is in substance much the same as his testimony, indicates that the physician last saw the patient on November 4, 1946, prior to making the sworn statement, that at the time there was a complete recovery of both corneas, and that when the form was executed the physician was still attending the plaintiff. The documentary evidence also includes the insurance policy, reference in the brief of evidence being made to the same as it appears in the plaintiff's petition and the exhibit thereto; and a sworn statement made by the plaintiff on November 7, 1946, the same having been submitted to the insurance company and the information appearing therein being in accord with the plaintiff's testimony about the same facts and including no additional material facts.

The jury returned a verdict for the plaintiff for $256 and interest, and judgment was rendered accordingly. The defendant filed a motion for a new trial, and excepted to the judgment overruling this motion.

The sole issue before this court is whether under the evidence the jury was authorized to determine that the loss of sight in the plaintiff's left eye occurred in such a manner as to render the insurance company liable under the provisions of the insurance policy. By the express terms of the policy the insured was entitled to payment for the loss of eyesight only if, among other things, there was, within 90 days after an accidental injury as a direct result thereof, independently and exclusively of all other causes, an entire and irrecoverable loss of eyesight. The testimony of the plaintiff and others is uncontradicted in the fact that prior to October 4, 1946, he could see out of both eyes, although there is evidence of an impairment of sight; and there is no dispute in the fact that he sustained an injury to both eyes on or about October 4, 1946. It was also established without

dispute that, at the time of the trial on January 13, 1949, and just prior thereto, on January 7, 1949, he was totally blind in his left eye, and that the same was covered with a white cataract. The plaintiff testified that he could not see out of this eye when he left the hospital, apparently on or about October 7, 1946. His mother and brother-in-law testified that the eye changed in appearance and turned white after receiving the injury, but they did not specify when this took place. The attending physician examined the eye after it had completely healed, apparently after the plaintiff left the hospital, and on or prior to November 4, 1946, at which time he found that the plaintiff could see out of either eye, 20/30 in the right eye and 20/200 in the left eye, and he attributed the impairment in the left eye to causes other than the injury received on October 4, 1946. The conflicts that arise in this case are not in the evidence itself, but in the contrary inferences arising from the evidence. The plaintiff's evidence shows that he could not see out of his left eye on two occasions, when he left the hospital, and more than two years later, at and just prior to the time of trial, and the defendant's evidence, by the testimony of the attending physician, clearly indicates that during the time intervening, after the plaintiff left the hospital and when the eyes had completely healed, and indicated by his sworn statement as prior to November 4, 1946, the plaintiff could see out of his left eye; and the plaintiff offered no direct evidence showing that he could not see out of his left eye at the time of this examination. Under the evidence, the fact of sustaining a total and irrecoverable loss of sight in the plaintiff's left eye within 90 days from the injury and solely as a result of the injury is necessarily dependent upon inferences, and contrary inferences arise which are nonetheless probable, to the effect that the loss of eyesight, even if total and irrecoverable, was not solely the result of injuries, and did not occur within 90 days from the date of the injuries. In other words, there is no evidence authorizing inferences by the jury to the effect that there was a total and irrecoverable loss of sight within the 90-day period solely as a result of the injuries to the exclusion of contrary inferences, and neither fact can be established from the evidence to the exclusion of the other. Under such circumstances a verdict for the plain-

tiff, on whom the ultimate burden of proof rested, was not authorized. See *Georgia Ry. & Electric Co.* v. *Harris*, 1 *Ga. App.* 714, 717 (57 S. E. 1076). It follows that the trial judge erred in overruling the defendant's motion for a new trial. Compare *Metropolitan Life Ins. Co.* v. *Jackson*, 79 *Ga. App.* 263 (53 S. E. 2d, 378).

   *Judgment reversed.* *Felton and Worrill, JJ., concur.*